STOCK v. TOWNSHIP OF JEFFERSON.

1. WATERS—DIVERSION—INJUNCTION.

An injunction to restrain the unlawful diversion of water from a mill will not be refused to one who has acted promptly in asserting his rights, on the ground that the injury to him from the diversion of the water will be trivial compared with that sustained by the persons seeking to make the diversion in case they are not permitted to do so.

2. SAME—ESTOPPEL.

A mill owner is not estopped to enjoin the maintenance of a ditch whereby water is diverted from his premises, where he forbade the digging of the ditch in the first instance, and, when it was continued, served upon those engaged in its construction a copy of an injunction issued in favor of his grantors in a similar controversy a number of years previously, although some 16 months were occupied in the digging of the ditch, and it had been completed at the time the bill was filed.

| 114 | 357 |
| 121 | 640 |

| 114 | 357 |
| f124 | 410 |
| 114 | 357 |
| s72ᴺᵂ | 132 |
| s132 | 96 |
| 133 | ³418 |

| 114 | 357 |
| 139 | ¹622 |

| 114 | 357 |
| 138 | 485 |

3. SAME—RIGHTS OF PROPERTY.

> The diversion of water from a mill, without due process of
> law and without compensation, cannot be justified on the
> ground that it will result in the improvement of the highways
> and the reclaiming of marsh lands.

Appeal from Hillsdale; Lane, J.    Submitted June 18, 1897.    Decided September 14, 1897.

Bill by Frederick W. Stock against the township of Jefferson and George E. Porter to enjoin the maintenance of a drain.    From a decree for complainant, defendants appeal.    Affirmed.

*Frankhauser Bros.*, for complainant.

*Chester & Twiss*, for defendants.

MOORE, J.    September 4, 1894, the complainant commenced this proceeding, praying for an injunction compelling the defendants to fill up a ditch they had dug to lower Pleasant Lake, and carry the water therefrom south and east into the St. Joseph river, and then into the Maumee, and then into Lake Erie; complainant alleging that the waters from Pleasant Lake had always run to the north and west, and through a chain of lakes and St. Joseph river to his mill, and from there on into the waters of Lake Michigan.

Prior to 1853 a flouring mill was built at Hillsdale, which mill was run by water taken from the St. Joseph river.    This river has its source in a chain of lakes four or five in number, the largest of which is Baw Beese Lake, and the farthest of which is Lake Pleasant.    In 1853 parties began to dig a ditch to carry the water in the direction in which the defendants have taken it.    The then owners of the mill filed in the circuit court of Hillsdale county a bill praying for a writ of injunction to restrain the parties from pursuing their work.    A decree was rendered in that case in accordance with the prayer of the bill.    In 1869 the complainant became the owner of

the mill in question, and has owned and operated it ever since. The defendant township and George E. Porter, highway commissioner, caused a ditch to be dug in the summers of 1893 and 1894, for the purpose of improving a highway in the township of Jefferson, in which there was a sink hole, which gave the township authorities a great deal of trouble. In the summer of 1893, while defendants were digging this ditch, complainant saw and talked with a number of those engaged in the work, and notified them that the water they were diverting belonged to him, and that he used it for the purpose of conducting his business in the city of Hillsdale; and on April 27, 1894, when defendants resumed their work on the ditch, complainant caused a copy of the decree that was made in 1853 to be served upon the highway commissioner, and forbade their continuing their work. As they failed to do so, this bill was filed.

The case was heard in open court. In addition to hearing the testimony, the trial judge visited the premises, and saw what had been done, and the topography of the country. The judge found that much of the water which naturally flowed out from Lake Pleasant and from the big marsh about one of the other lakes would come down to the mill pond of the complainant if not diverted, and that Mr. Stock, as owner of the mill, had a right in the waters which naturally flowed from Lake Pleasant and this big marsh into his mill pond, and that the defendants were not justified in the action they had taken in digging this ditch, and the effect of it was to divert the water from the mill, and granted a decree in the case, enjoining the defendants from diverting the waters which would naturally come to complainant's mill pond, and directing that the ditch be filled up at a certain point, to a certain depth, from which decree defendants appeal.

While the testimony is conflicting, we have no doubt, from an examination of the record, that the conclusion of the learned trial judge that the digging of this ditch was without legal right, and that its effect was to divert from

complainant's mill a very considerable quantity of water to which he was entitled, is fully justified by the evidence. There can be no question from the record that the complainant was legally entitled to the use of all the water that would naturally come to his mill pond. The defendants were not riparian proprietors on the stream, and there is no question of the adjustment of the rights of several riparian proprietors on the same stream of water. So far as defendants diverted water to which complainant was entitled, they were trespassers.

It is the claim of the defendants that the loss to the complainant caused by the diversion of the water is trivial, while the damage the defendants would sustain if a permanent injunction is granted would be very great, and that, therefore, the injunction ought not to be allowed; citing *Potter* v. *Street Railway*, 83 Mich. 298, and cases there cited; *Torrey* v. *Railroad Co.*, 18 N. J. Eq. 293; 10 Am. & Eng. Enc. Law, 799, and note; *City of Logansport* v. *Uhl*, 99 Ind. 539 (50 Am. Rep. 112). None of these authorities establish the doctrine that, where one trespassed against acts promptly after notice of the trespass, equity will not interfere, where the trespass is of a continuing nature, and is irreparable in its character. An examination of these cases will show either that it was doubtful if any damage would be done, or the complainant had not acted promptly in appealing to equity. It does not appeal to one's sense of justice to say that the exercise of a right possessed is not of as much benefit to the possessor as the taking of that right from the owner would be to the trespasser, and therefore the trespasser should be allowed to continue his trespass.

We think it clearly appears from the testimony that a large amount of water has been diverted from complainant's mill to which he was entitled, and that the diversion will continue if the action of the circuit judge is not sustained. It is doubtless true that many owners of lowlands about Pleasant Lake and the large marsh are benefited by the cutting of this ditch, but one man is not

to be deprived of property rights because to do so would benefit others more than he is injured.

"It has always been settled that the owner of realty is entitled to the aid of equity to prevent permanent and continually-recurring injuries to the enjoyment of his property. To deprive him of such enjoyment is to deprive him of the property itself, wholly, or to the extent of the mischief. Neither can it be allowable for wrong-doers to rely on their own wrong to change or lessen his means of redress. When they do mischief, it is their own fault if they render a stringent remedy necessary, and they, and not the party injured, must take the consequences." *Koopman* v. *Blodgett,* 70 Mich. 610, 618 (14 Am. St. Rep. 527); *Hall* v. *City of Ionia,* 38 Mich. 493; 1 High, Inj. § 804; Ang. Watercourses, § 447; *Corning* v. *Nail Factory,* 40 N. Y. 191.

In the case of *Koopman* v. *Blodgett, supra,* it is said:

"A person owning a suitable place for a mill site cannot be deprived of it because some one else has wrongfully interfered with the stream above him. Without either such a lapse of time as will bar suit or indicate acquiescence, or some act of estoppel, rights of property are not to be barred."

In the case at issue, the complainant and his grantors had maintained a mill at this place for more than 40 years, and whenever an attempt was made to divert the water in the manner it has been diverted by the defendants the courts were appealed to. Counsel say complainant stood by, and allowed defendants to incur large expense, and that he is estopped from appealing to equity now. We cannot agree with counsel in their contention. The defendants knew the complainant was opposed to what they did. He forbade their acts, and, when they continued them, he caused a copy of a decree made more than 40 years ago, in favor of his grantors, to be served upon them, and, when they paid no attention to all this, without unreasonable delay he appealed to the court. If they have expended considerable sums of money in committing this trespass, it is their own fault, and they must lose it.

It is urged very earnestly by counsel that Mr. Stock's

right to maintain his dam and to use the water that would naturally come to his mill must give way to the right of the public to improve the highways, to drain lands, and to generally improve the country. It is sufficient reply to this argument to say that it has long been the fundamental law of the land that a man is not to be deprived of his property without due process of law, and without compensation.

Decree is affirmed, with costs.

The other Justices concurred.