TEBBEL v. SPENCER ELECTRIC LIGHT & POWER CO.

1. WATERS AND WATERCOURSES — POWER RIGHTS — RIVERS — MEASUREMENTS.

   In a suit between the owner of a dam and a corporation maintaining a dam lower in the stream, for injury to complainant's power by backing water into his race and for maintaining a head of more than eight feet in violation of an agreement determining their respective rights, it will be assumed, in the absence of rebutting testimony, that in measuring the head of water, the datum was obtained by finding the vertical distance from the water in the flume or place from which it was drawn to the tailwater.

2. SAME.

   Upon testimony showing that the tailwater, at the time defendant secured its rights, was on a level with the floor of an old wheelhouse that remained standing at the same place and height as it always had stood, the court was justified in taking the floor as a basis of measurement.

3. SAME—ESTOPPEL.

   Mere neglect on defendant's part to use its entire head of water during twenty years did not estop it from claiming such right.

4. SAME.

   Estoppel requires some evidence of dealing in reliance on apparent existing conditions.

5. SAME—DECREE—HEAD OF WATER.

   Defendant's grant to "erect, enjoy and maintain said dam to a height as to have at no time a head of water at said dam of more than eight feet," authorized and limited its rights to a standing head of eight feet; so that if the water should flow over the crest at a depth of two, four, or six inches, a head in excess of the authorized height would be maintained, and the decree is interpreted to so regulate defendant's rights.

Appeal from Ionia; Mayne, J., presiding. Submitted April 10, 1911. (Docket No. 66.) Decided December 17, 1912.

Bill by William R. Tebbel against the Spencer Electric Light & Power Company and another to determine conflicting power rights claimed by the parties. At the death of complainant, Mary Tebbel, executrix of his estate, was substituted as complainant. From a decree for defendants, complainant appeals. Affirmed.

*George E. Nichols* and *Locke & Sheldon*, for complainant.

*I. L. Hubbell* and *R. A. Hawley*, for defendants.

BIRD, J. This contest is between two dam owners. The dams are about one-half mile apart. The complainant, who is the upper proprietor, claims that the first-named defendant, who is the downstream proprietor, is maintaining a head of water in excess of what it is entitled to, with the result that it backs the water into his tailrace and diminishes his power. The defendant takes the position that it can and has established its right to maintain an eight-foot head, and that, if the water standing at that level diminishes complainant's power, he, and not defendant, must bear the loss. After a very full and extended hearing, in which both sides were ably represented, the trial court denied complainant the relief which he sought and dismissed his bill, and, under defendant's prayer for affirmative relief, fixed the height the water could be raised at defendant's dam and directed the point to be ascertained and marked by a suitable monument.

The complainant's mill and dam are located on Seeley creek, near the village of Smyrna, in the county of Ionia. Seeley creek discharges its waters into Flat river. A short distance downstream from the junction of the two, the defendant's mill and dam are located. Complainant's mill and dam were built in the early 50's, and the defendant's about 10 years later. The natural fall between the two dams is about six feet. From the time defendant's dam was built until the year 1874, approximately a six-foot head was maintained. During these years complain-

ant claims that his grantors had a head of nearly 20 feet. In the year 1873 the respective owners of these dams fell into a disagreement over the attempt of defendant's predecessor to reconstruct a portion of his dam, which had been washed out by a flood, higher than it had been theretofore maintained. The controversy found its way into court, but was adjusted by the parties themselves in March, 1874, before it came to a hearing. The terms of the compromise were a conveyance to defendant by complainant of the right to flow the lands above his dam to the extent that an eight-foot head would necessitate, and complainant received therefor, as a consideration, the sum of $1,150. This change in their respective rights lessened complainant's head two feet and increased defendant's to eight feet. Matters went along without much friction until 1904, when complainant complained to defendant that it was maintaining a head in excess of eight feet. More or less controversy between them thereafter ensued until this suit was begun in 1906.

Complainant purchased the Seeley creek property in 1880, and he claims that at that time he measured the head and found it to be $17\frac{1}{2}$ feet. He charges that this $17\frac{1}{2}$-foot head has gradually lessened until now he has only a 16-foot head, and he further charges that defendant is responsible for this diminution of his power by increasing from time to time the height of its dam and thereby increasing its head. Complainant also charges that the defendant the Belding Land & Improvement Company owns and maintains a dam on Dickson creek, which empties into Flat river some distance upstream, and that it impounds the water for a considerable period and then releases it in such large quantities that the water is driven up into his tailrace, thereby preventing his tailwater from getting away as quickly as it otherwise would. This he claims is done for the benefit and with an understanding with the defendant electric company.

The defendant electric company relies on its grant from complainant's predecessor in title by which it acquired the

right to maintain an eight-foot head, and insists that it has not in the past nor is it now maintaining a head of water in excess of eight feet.   It is admitted by the defendant electric company that, since it purchased the property in 1893, it has steadily held the water somewhat higher than it was previously held, and that it was justified in so doing because the old dam was incapable of carrying an eight-foot head; that since its purchase the dam has been repaired and a portion of it rebuilt; that it was at the time of the purchase a leaky dam, but since it has been improved it is tight and will hold the water much higher than before; that since it was improved the water has been carried higher by means of flashboards, but not to the extent that would exceed an eight-foot head.

On the hearing of the case in the trial court, much testimony was offered by complainant tending to show that his dam originally had a 20-foot head, and that defendant had added materially to the height of its dam.   The defendant denied both of these propositions and offered proofs tending to disprove them.   We shall make no attempt to determine how much head the respective dams carried prior to March, 1874.   The settlement which the owners made at that time renders it in a measure unnecessary. By their own agreement the heads of both dams were materially changed, and we think it is by this agreement that the rights of the parties must now be determined. The material portion of the grant from complainant's predecessor in title to defendant's predecessor in title is as follows:

"To so erect, enjoy and maintain said dam to a height as to have at no time a head of water at said dam of more than eight feet, with the right and privilege in perpetuity of flowing the land and premises of the said Spencer bordering upon said river and hereinbefore described."

By this grant defendant was given the right to flow complainant's lands to the extent that an eight-foot head would necessitate.   We are of the opinion that the defendant still has that right, and this conclusion at once

brings us to the question as to how it should be determined. It is conceded by counsel that it should be determined as nearly as possible in accordance with the conditions as they existed at the time the grant was made. It appears that after the settlement, surveyors were employed by the owners to take levels and fix the mark of the eight-foot head at both plants, but these marks seem to have long since disappeared. We think it is safe to assume that the usual method was adopted of ascertaining the head by measuring the vertical distance from the water in the flume or place from which it is drawn, to the tailwater. *Shearer* v. *Middleton*, 88 Mich. 621 (50 N. W. 737). The trial court found as a fact, and we think he was justified in so finding, that the water in the tailrace, at the time the grant was made, was on a level with the floor in the old wheelhouse at defendant's plant, in which was installed a 74-inch La Fell wheel in 1875. The testimony tended to show that this floor was yet intact and unmoved from its position in 1875. Taking this floor as a basis of measurement, the trial court held that the defendant electric company was entitled to raise the water eight feet above it.

Complainant takes issue with the trial court on this method of determining defendant's head, and says that it should not be made at defendant's dam without regard to the extent of flowage that an eight-foot head would necessitate. The defendant was not given the right to set back the water a certain distance nor up to a certain point, nor was the right granted one to flow a certain number of acres, but was a right to flow such lands as an eight-foot head would necessitate. When complainant's grantor conferred this right upon his grantee, we must presume that he did so intending to accept all the consequences that an eight-foot head would produce. 2 Farnham on Waters and Water Rights, p. 1790; *Sanford* v. *Nyman*, 23 Mich. 326.

It is also contended by complainant that the testimony shows that from 1874 to 1894 there was no change in the

height of the head maintained at defendant's dam, and
that, if defendant did not raise the water during that time
to the full height to which he was entitled, he is now
estopped from raising it higher than it stood during that
period.    There is testimony in the record which shows
that the water several times a year, from 1874 to 1894,
was raised as high as defendant has ever raised it since
1894; but, were we to concede that counsel is right on the
fact, we think he is wrong on the law.    If it be conceded
that defendant's grantors used only seven feet of head
from 1874 to 1894 when they were entitled to eight feet,
the nonuse of the one foot for that time would not deprive
defendant of the right to claim and use it now.    3 Farn-
ham on Waters and Water Rights, p. 2294; *Day* v. *Wal-
den*, 46 Mich. 575 (10 N. W. 26).    In the last case cited,
Mr. Justice COOLEY, in considering a similar claim, said:

"The right to the easement was not lost by the mere
neglect to assert, use, and enjoy it for the period of 20
years.    There is no doubt of this upon the authorities.
The easement was created by grant as an appurtenance to
the mill, and there were no conditions or limitations at-
tached which rendered its use necessary to its continu-
ance.    The grant was perpetual, and without conditions;
and therefore the privilege granted would continue indef-
initely whether the grantee did or did not avail himself of
it.    An accepted grant cannot be waived or abandoned;
and the neglect of the grantee to enjoy the easement
would be no more significant in its bearing upon his rights
than the neglect to enjoy the freehold to which the easement
was appurtenant"—citing *Arnold* v. *Stevens*, 24 Pick.
(Mass.) 106 (35 Am. Dec. 305); *Bannon* v. *Angier*, 2
Allen (Mass.), 128; *Hayford* v. *Spokesfield*, 100 Mass.
491; *Owen* v. *Field*, 102 Mass. 114; *Barnes* v. *Lloyd*,
112 Mass. 224; *Taylor* v. *Hampton*, 4 McCord (S. C.),
96 (17 Am. Dec. 710); *Elliott* v. *Rhett*, 5 Rich. (S. C.),
405 (57 Am. Dec. 750); *Corning* v. *Gould*, 16 Wend. (N.
Y.) 531; *Wiggins* v. *McCleary*, 49 N. Y. 346; *Hall* v.
*McCaughey*, 51 Pa. 43; *Ward* v. *Ward*, 7 Exch. 838;
*Car* v. *Foster*, 3 Q. B. 581; *Crossley* v. *Lightowler*, L.
R. 3 Eq. Cas. 279; s. c. on appeal 2 Ch. App. 479; *Cook*
v. *Mayor*, L. R. 6 Eq. Cas. 177.

We are not impressed that complainant and his grantors dealt with their property to any considerable extent in reliance upon the head as maintained at defendant's dam from 1874 to 1894, and therefore there is little or no foundation upon which to base a claim of estoppel.

There seems to be some misunderstanding between counsel as to whether the decree provides for an eight-foot standing head or an eight-foot running head. Complainant insists that the decree provides for an eight-foot running head, and he argues that this is wrong; that, while the terms of the grant are silent as to which was intended, the construction subsequently placed upon it by the parties shows that an eight-foot standing head was contemplated. Our understanding of the decree is that it gives an eight-foot standing head, and counsel for defendant concedes that such is the fact. If there is any question concerning it, we think it should be construed to be a standing head. This, of course, would not necessarily mean that an eight-foot permanent dam could be erected without a violation of the terms of the grant. The language of the grant, that defendant might "erect, enjoy, and maintain said dam to a height as to have at no time a head of water at said dam of more than eight feet," etc., precludes the right to maintain more than an eight-foot head. Should a dam eight feet high be erected and the water flow over the crest at a depth of two, four, or six inches, a head in excess of an eight-foot standing head would thereby be maintained. Provision must be made to regulate the head so that it will not exceed eight feet.

We are of the opinion that the trial court reached the right conclusion, and its decree will be affirmed. Defendants will recover their costs in this court.

MOORE, C. J., and BROOKE, STONE, and OSTRANDER, JJ., concurred.