PRESTON *v.* CLARK.

1. WATERS AND WATERCOURSES—RIPARIAN RIGHTS — NO ADVERSE RIGHTS GAINED BY NONUSER.

The upper riparian proprietors of the right to erect and maintain a dam do not lose that right by nonuser, no matter how long the lapse of time, and therefore lower riparian proprietors do not gain any prescriptive rights thereby.

2. SAME—NO PRESCRIPTIVE RIPARIAN RIGHTS GAINED BY LOWER OWNER BY FIRST OCCUPANCY.

Although a prescriptive riparian right may, in this jurisdiction, be acquired by adverse user, there is no such thing recognized as prior appropriation or first occupancy by a lower proprietor.

3. SAME—USE BY LOWER OWNERS NOT ADVERSE TO RIGHTS OF UPPER OWNERS.

The owners of mills on a stream could not gain any rights adverse to the owners of a riparian right to erect and maintain a dam five miles above them, since the use of the lower owners in no way encroached upon or was adverse to the upper riparian owners.

4. SAME—PRESCRIPTIVE RIPARIAN RIGHT RESTS ON PRESUMPTION OF GRANT—ADVERSE USER MUST BE FOR STATUTORY PERIOD.

Underlying the rule of prescriptive riparian rights rests the presumption of a grant, and in all cases the user, in order to create a prescriptive right, must be visible, continuous, and notorious, and must continue for the period required to secure, by prescription, rights in realty.

5. SAME — DAMAGE CAUSED BY ERECTION OF DAM · BY UPPER RIPARIAN OWNER DAMNUM ABSQUE INJURIA.

Although the erection of a dam by upper riparian owners may increase the area of a lake and thereby occasion greater evaporation and percolation of its waters, and also interfere with the flow of the springs in the bed of

---

[1]Waters, 40 Cyc. p. 566; [2]Id., 40 Cyc. p. 695, 708; [3]Id., 40 Cyc. p. 697; [4]Id., 40 Cyc. pp. 695, 696, 698; [5]Id., 40 Cyc. p. 606 (Anno).

the lake, they are but incidents accompanying every ponding of water, and, if the dam serves a useful purpose, they afford no ground for an injunction or a right of action for damages by lower riparian owners, for they fall within the rule *damnum absque injuria.*

6. SAME—JUDGMENT—PARTIES—RIGHTS OF OWNERS NOT PARTIES NOT AFFECTED BY DECREE.

A decree denying to lower riparian owners the right to restrain the erection of a dam does not affect the rights of upper riparian owners or the public, who are not parties.

BIRD, J., dissenting.

Appeal from Livingston; Collins (Joseph H.), J. Submitted October 7, 1926.　(Docket No. 33.)　Decided June 6, 1927.

Bill by Harry S. Preston and another against Charles Clark and another to enjoin the maintenance of a dam. From a decree for defendants, plaintiffs appeal.　Affirmed.

*Clarence Tinker,* for plaintiffs.

BIRD, J. (*dissenting*).　Plaintiff Preston is the owner and operator of a grist mill at the village of Hartland.　Plaintiff Foltz is the owner and operator of a grist mill at Parshallville.　Both mills are operated by water power.　The outlet of Whalen lake furnishes these mills with their principal source of water, although there are other smaller contributing streams.　These mills have used the water from this outlet for many years.　In October, 1905, the outlet was lowered by drain proceedings, thereby increasing the flow of the water in the outlet.　In the fall of 1923 defendants, who owned the land, constructed a dam in the outlet about 200 feet from the lake.　This dam is about two feet high, which plain-

---

°Judgments, 34 C. J. § 1480.

tiffs claim had the effect of raising the water in the lake about two feet. Plaintiffs claim this impedes the flow of the water in the outlet and diminishes the amount of water which finally reaches their mill ponds, and that they are thereby materially damaged in the operation of their mills. They filed this bill for injunctive relief. The principal defense seems to be that plaintiffs are not injured by the dam. The trial court took this view of the matter and denied plaintiffs relief, and they have appealed.

Whalen lake is a body of water covering nearly 100 acres and is fed by springs. The outlet is a small stream. The volume of water carried in the stream is not large but appears to be constant. This stream has contributed, with other streams, for upwards of 50 years in furnishing power for the mills owned by plaintiffs. The plaintiffs claim the right to have the waters of the stream flow to their mill in the same unimpeded way they have for 50 years without diversion. They claim this right by prescription. Having used the waters of the stream in its natural flow for 50 years they undoubtedly have this right. *Stock* v. *City of Hillsdale,* 155 Mich. 375; *Hyatt* v. *Albro,* 121 Mich. 638; *Suffrouw* v. *Brewer,* 204 Mich. 370.

In the first case cited plaintiff made complaint that the waters of the St. Joseph river were unlawfully diverted to the detriment of his mill, and the court said in part:

"It is undeniable, however, that the complainant's rights were infringed by diverting this water, and that the value of his property—the mill at Hillsdale—was to some extent affected by this fact, and we think the rights of complainant may well be adjudged in this case."

In the second case cited the complaint was similar to the one made here, except the complaint had refer-

ence to the lowering of the outlet of the lake rather than increasing its height. The court, in granting relief, said in part:

"The complainants have the right to have the water flow naturally, without being accelerated or impeded, except to the extent that the concurrent rights of the upper riparian proprietors may effect such results. In so far as the proper use of the stream above results in inconvenience, or impedes the use of the stream by complainants, it is *damnum absque injuria.* Has the upper riparian owner the right to reclaim a portion of this lake by so accelerating the flow of the stream as to lower the water in the lake, thereby narrowing the area so as to reclaim overflowed lands? This accumulation of water from the overflow of the banks of the lake, fed by the Shiawassee river above, cannot be called surface water. *West* v. *Taylor,* 16 Or. 165 (13 Pac. 665); *Schaefer* v. *Marthaler,* 34 Minn. 487 (26 N. W. 726, 57 Am. Rep. 73); *Macomber* v. *Godfrey,* 108 Mass. 219 (11 Am. Rep. 349); Gould, Waters, § 264; *Stock* v. *Township of Jefferson,* 114 Mich. 357 (38 L. R. A. 355). The right to drain surface water is clear. Gould, Waters, § 265. But the right to drain any portion of the waters of these lakes above, which constitute the source of supply to the complainants' water-power, would unquestionably be a wrong against complainants if the water were diverted from the stream. Is it any the less an interference with the complainants' property rights if the water be precipitated in an artificial manner by means of a deepened channel through the stream itself? We think not. On the contrary, this increasing of the flow, it is alleged with much force, would work an additional injury by imperiling complainants' dam. The circuit judge was of the opinion that the flow of water would not be diminished by the deepening of the river. We think it clear, however, that by the deepening of the channel the water will be carried off more rapidly than it now is. Indeed, if it is not expected that this will be the result of the improvement, we are at a loss to understand why it was undertaken.

"The decree dismissing the bill of complaint is re-

versed, and a decree will be entered enjoining the proposed deepening of the river, with costs of both courts to complainants."

The third case cited holds that a prescriptive right to the flow of water can be acquired by 20 years of user, and a decree was made restoring the water of the stream to its natural channel.

But the prescriptive right of plaintiffs to have the water flow to their mills as it had for 50 years does not appear to have been seriously contested by opposing counsel, and the right seems to have been recognized by the court, as he put the case off on the theory that plaintiffs were not injured by the dam and the raising of the water in the lake.

When the dam was constructed in the outlet it raised the level of the lake about two feet. This had the effect of increasing the area of the lake to the extent of 20 feet in circumference in most places. The proof shows that adding these two feet of water would increase the pressure on the springs which fed the lake, and thereby lessen their flow. Further, by increasing the area it would increase the evaporation and percolation and thereby reduce the amount of water passing into the outlet. These propositions are convincing.

Notwithstanding this right is a limited one, it is a substantial right which plaintiffs have acquired by prescription, and they are entitled to have it protected. If plaintiffs have had an uninterrupted use of this stream for the years which the record shows, they are entitled to the continued use of it without material diminution or delay.

The trial court was of the opinion that the case was ruled by *Dumont* v. *Kellogg*, 29 Mich. 420 (18 Am. Rep. 102). We do not think that case is in point because no question of prescriptive right was involved.

in the lower proprietor in the case cited.     It was said
in that case:

"It is not claimed that any question of prescription
is involved, and the case is consequently to be regarded
as only presenting for adjudication the relative rights
of the parties at the common law to make use of the
flowing waters of the stream, unaffected by any ex-
ceptional circumstances."

Complaint is made because the trial court refused to
hear evidence on the question of damages.   If plaintiffs
have suffered damages by reason of the dam they are
entitled to recover them.     *Woodin* v. *Wentworth,* 57
Mich. 278.     This case prescribes a rule for estimating
them.     See, also, *Stock* v. *City of Hillsdale, supra,*
as damages were awarded in that case.

The decree should be reversed and one entered order-
ing the removal of the dam, as prayed.     The record
should be remanded to the trial court to take proofs
on the question of damages.     If plaintiffs are able
to show damages under the rule laid down in the case
cited the trial court should render a decree for such
damages as are shown.     The plaintiffs should recover
costs of both courts.

WIEST, J.     I am at variance with the opinion of Mr.
Justice BIRD.     The mill of plaintiff Preston is five
miles distant, by the stream, from the little dam
erected by defendants on their own property, and the
pond at Preston's mill backs water only about three-
quarters of a mile.     The mill of plaintiff Foltz is be-
low Preston's.     No prescriptive right of any kind
obtains in this case.     Defendants, by nonuser of their
riparian right to erect a dam lost nothing to plaintiffs.
The prescriptive right involved in *Stock* v. *City of
Hillsdale,* 155 Mich. 375, was that of an *upper* pro-
prietor to divert water from the stream, and mani-
festly does not apply to prescriptive rights acquired
by a lower against an upper riparian proprietor.

*Suffrouw* v. *Brewer*, 204 Mich. 370, also involved a prescriptive right to divert water from a stream. *Chapel* v. *Smith*, 80 Mich. 100, involved a prescriptive right of an upper proprietor to drain water onto a lower. The same is true of *Conklin* v. *Boyd*, 46 Mich. 56, and *Gregory* v. *Bush*, 64 Mich. 37 (8 Am. St. Rep. 797). The statement in my Brother's opinion: "If plaintiffs have had an uninterrupted use of this stream for the years which the record shows, they are entitled to the continued use of it without material diminution or delay," ignores the rights of defendants as upper riparian proprietors, and adopts a rule contrary to the overwhelming weight of modern authority.

To my mind, my Brother makes no distinction between a prescriptive right by adverse user and the old and abandoned rule of first occupancy or prior appropriation. A prescriptive right may, in this jurisdiction, be acquired by adverse user, but there is no such thing recognized here as prior appropriation or first occupancy by a lower proprietor. I think the case of *Dumont* v. *Kellogg*, 29 Mich. 420 (18 Am. Rep. 102) decisive upon every question involved in this case.

In considering the question of prescriptive right, we keep in mind the fact that the mills of plaintiffs are at least five miles below defendants' land and use of the stream by plaintiffs has not in any way encroached upon or been adverse to the riparian rights of defendants. My Brother's view, as said in the *Dumont Case*, would grant plaintiffs a monopoly of the stream by destroying all rights of upper riparian proprietors. No such result is permissible. Lapse of time, no matter how long, can work no such result. Plaintiffs, in their use of the water, never interfered, in the slightest degree, with defendants' riparian rights. Underlying the rule of prescriptive rights rests the presumption of a grant, and in all cases the user, in

order to create a prescriptive right, must be visible, continuous, and notorious, and must continue for the period required to secure, by prescription, rights in realty.     See *Rickels* v. *Log-owners' Booming Co.*, 139 Mich. 111; *Kennedy* v. *Niles Water Supply Co.*, 173 Mich. 474 (43 L. R. A. [N. S.] 836).     The legal principles involved in the case at bar were well settled in the leading case of *Hoy* v. *Sterrett*, 2 Watts (Pa.), 327 (27 Am. Dec. 313).     The question there was whether the right of Hoy to the use of the water for his mill, as he had used it for 30 years, was such that no owner of land upon the stream above would be permitted to interfere therewith by the erection of another dam, and involved the doctrine of prior occupancy and the rule of prescriptive right.     The decision aptly fits the case at bar, and the reasoning is so sound as to justify liberal quotation therefrom. We, therefore, quote:

"A person erecting a mill and dam upon a stream of water, does not, by the mere prior occupation, gain an exclusive right, and cannot maintain an action against a person erecting a mill and dam above his, by which the water is in part diverted, and he is in some degree injured.     *     *     *     A contrary principle would be very pernicious, particularly in a new country; for the necessary effect will be to impair the value of all the land through which the stream passes. *     *     *     If a thing be common, there may be an appropriation by general consent or grant.     Mere priority of appropriation of running water, without such consent or grant, confers no exclusive right. It is not like the case of mere occupancy, where the first occupant takes by force of his priority of occupancy.     That supposes no ownership already existing, and no right to the use already acquired.     But our law annexes to the riparian proprietors the right to the use in common, as an incident to the land; and whoever seeks to found an exclusive use must establish a rightful appropriation in some manner known and admitted by the law.     *     *     *

"On this part of the case, the court was requested

to charge the jury, that if the jury believed that Hoy, and those under whom he claims, have occupied and used the water for near 40 years, the jury may, and are bound by law to presume there was a grant from the owners of the tract of land above and adjoining for using it, and the plaintiff would be entitled to recover. To this the court answer, We can see nothing in this case for a presumption such as the plaintiff requires. There was no use of any part of the land held by Sterrett for the use of Hoy's mill; no overflowing of land claimed by the defendant. * * *

"This principle of presumption is introduced in analogy to the act of limitations; and to raise the presumption of a grant, the enjoyment must have been adverse; * * * Hoy built his mill on his own land, and swelled the water on his own land. Sterrett had no reason to complain of Hoy, nor was there a time when he had a right of action against him. Nor can he, with any propriety, be said to have acquiesced in the enjoyment of the water by Hoy. He cannot be said to have granted a right, about which it would have been an impertinent interference to utter a complaint. Hoy could not have been restrained by any legal process from the enjoyment of the right in the manner he had been accustomed. How can Sterrett be presumed to grant that which Hoy had a right to do independent of his grant. There is nothing unreasonable in requiring Hoy, when he erected his mill, to erect it with a view to the capacity of the stream and the rights of his neighbors. And it must be presumed he had done so, as by prior occupation alone he acquires no right. It is said the doctrine is necessary to promote peace, and it is admitted that the general principle of presumption is so; but it is also equally necessary to promote justice and fair dealing among neighbours. It amounts to this, that when the riparian owner above is unable, which is frequently the case, to improve and use the water on his own land, he must be deprived of a right incident to his land, and which may constitute its principal value. * * *

"The rights of riparian owners must be adjusted in the same manner as if each mill had been erected at

the same time; lapse of time not having given any superior right to either party."

This is exactly in line with *Dumont* v. *Kellogg, supra,* and I have found no decision in this State contrary thereto. Plaintiffs have no right to monopolize this stream under the rule of prescription, for that right rests upon adverse user, and nothing of that kind ever spanned the five miles between the mills of plaintiffs and defendants' riparian rights. Early cases may be found supporting the first occupancy or prior appropriation view when exercised for the prescriptive period. Such cases, however, do not follow the common law and are not in accord with the overwhelming weight of modern authority.

In 2 Farnham on Waters, § 536, the rule, applicable here, is well stated:

"The riparian owner receives the water as it flows to him by natural right, and in so doing he does not interfere with the rights of any other owner on the stream; and he can gain no prescriptive right to have the flow continue by the fact that he has received it without interruption by the upper owner for the prescriptive period. It may be that the upper owner has had no use for the water, but the mere fact, that he had none, and did not attempt to make any use of it, cannot deprive him of any of his rights or entitle the lower owner to insist that the flow shall continue uninterrupted, in case the upper owner finds use for the water."

And also in section 537:

"In order to ripen into a prescriptive right the use must be under claim of right, and adverse."

In the case at bar there has been no diversion of the water but merely a ponding within the former bed limits of the lake. But, it is said, this has increased the area of the lake by shallow covering of its former beach and has raised the surface of the lake and

238—Mich.—41.

thereby occasioned greater evaporation of its waters, percolation, and also interference with the flow of the springs in the bed of the lake. If defendants' dam serves in a reasonable way a useful purpose, the matters just mentioned are but incidents, accompanying every ponding of water; for all spread of water will accelerate evaporation and permit percolation, but affords no ground for an injunction or a right of action for damages, for they fall within the rule *damnum absque injuria.*

The evidence shows the lake is fed by springs located on the shore above the rise of water caused by the dam, with one exception. One witness said he saw a spring in the lake, but what effect the raising of the water had on that spring was not shown. We may not assume there are other springs in the bottom of the lake, and, on such an assumption, base another to the effect that the rise of the water has decreased the flow of such springs. We think the fountain head of a spring has something to do with the vent thereof, and decline to rest an affirmative finding on an unsupported assumption of fact and a questionable theory. Defendants owned the land on both sides of the stream at the outlet from the lake and some of the lake shore and placed the dam to raise the water in the lake partly to its old level to afford spawning ground for fish, and shallow beaches for resort purposes. Such use of the water was a beneficial one to defendants, let the water come down the stream as before after the raise in the lake was once accomplished, and was a reasonable and rightful exercise of their riparian rights, so far as plaintiffs, as lower riparian proprietors, are concerned. If the upper riparian proprietors on the lake have reason to complain they have a right to their day in court but are not parties to this suit. The public authorities are not parties, and what we have said concludes no public action.

The decree in the circuit restricted the height of the dam, and defendants not having appealed, we may not lift the restraint. Plaintiffs made no case. We have had no brief for defendants, and for that reason they are not granted costs.

The decree in the circuit is affirmed.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred with WIEST, J.