STUART *v.* DETROIT FINNISH CO-OPERATIVE SUMMER
CAMP ASSN.

1. WATERS AND WATERCOURSES—PRESCRIPTIVE RIGHTS—PRESUMPTION
OF GRANT.

Underlying the rule of prescriptive riparian rights rests the pre-
sumption of a grant, and in all cases the user, in order to
create a prescriptive right, must be visible, continuous and no-
torious, and must continue for the period required to secure
prescriptive rights.

2. SAME—LAKE LEVEL—PRESCRIPTIVE RIGHTS—EVIDENCE.

To sustain claim of prescriptive right to have inland lake water
at given level, evidence must tend to show exclusive enjoyment
of water substantially as claimed by plaintiff or his grantors,
adverse to defendant's rights, and without interruption, for a
period of at least 15 years.

3. SAME—ESTOPPEL—DAMS—LAKE LEVEL.

Plaintiffs, owners of land surrounding artificial lake caused by
dam raising level of several small lakes located three-quarters
of a mile from, but not visibly connected with, defendant's
lake, the level of which was also raised by such dam, *held*, not
to have acquired the right to raise level of defendant's lake by
estoppel, defendant, in the premises, having been under no
duty to speak before expenditure was made for dam and other
improvements.

4. SAME—LAKE LEVELS—DAMS—ACQUIESCENCE—ABATEMENT.

One who never consented to erection of dam, raising level of
nearby lakes not visibly connected with his own, which caused
his land to be overflowed, but who, as soon as he had knowledge
of effect of such dam, prepared to abate it, is not barred by
acquiescence from obtaining relief.

5. SAME—LAKE LEVELS—INJUNCTION.

Owner of land surrounding an inland lake not visibly connected
with lakes three quarters of a mile therefrom *held*, entitled to
injunction restraining owners of land surrounding latter lakes
from operation of dam so as to raise waters of his lake higher
than level prior to construction of the dam.

Appeal from Oakland; Covert (Frank L.), J. Submitted April 21, 1936. (Docket No. 13, Calendar No. 35,040.) Decided October 5, 1936.

Bill by Howard C. Stuart and others against Detroit Finnish Co-Operative Summer Camp Association, a corporation, and others to restrain the digging of a ditch and other relief. Cross-bill by defendant association against plaintiffs to secure lowering of a lake level and other relief. From decree rendered, both parties appeal. Bill dismissed and decree for cross-plaintiff granted on cross-bill.

*Edmund M. Sloman,* for plaintiffs.

*Anthony Nelson,* for defendants.

SHARPE, J. In July, 1925, the defendant company purchased a farm consisting of about 100 acres of land in Oakland county. This farm completely surrounded a small lake of approximately seven acres known as Sun lake. The easterly boundary of the farm was about 10 rods east of the east shore of the lake and about the same distance east of the east boundary of the farm was a bed of springs, the waters of which flowed easterly into a chain of small inland lakes. Between Sun lake and the springs was a ridge of high dry land and there were no visible water connections between Sun lake and the chain of lakes which were about three quarters of a mile east. After purchasing this property, defendants constructed a dock for boating and diving purposes, the lower platform of which was about 10 inches above the surface of the water. In addition to the building of this dock, defendant also constructed a bathing beach, bath house, dancing

pavilion and roads at a cost of approximately $30,000. West of Sun lake lies Loon lake separated by a ridge of land rising from three to four feet higher than the water of Sun lake and at its narrowest point 100 to 150 feet wide over which was a roadway. Across this roadway was a depression which formed a natural drain from Sun lake to Loon lake. The water in Loon lake was approximately two and one-half feet lower than the water in Sun lake.

Plaintiffs are the owners of land bordering on the chain of lakes east of Sun lake. In 1920, they entered into an agreement among themselves the purpose of which was the raising of the water of the chain of lakes by means of a dam to be constructed at their easterly side and at a distance of two miles from Sun lake. The dam was completed in 1922 and the waters gradually rose in the lakes above the dam so that in 1925 the marshy area surrounding the lakes was submerged to form one lake now known as Wolverine lake. Six or seven subdivisions beyond the new shore line were put upon the market and many cottages were built around Wolverine lake.

The water of Sun lake rose higher than its natural level and to relieve this condition defendant commenced the construction of a tile drain from Sun lake to Loon lake along the natural depression through the ridge of land separating these lakes, the purpose of which was to drain off some of the water into Loon lake. Plaintiffs commenced the present action to restrain the construction of this drain; defendant filed an answer and cross-bill by which it asked that plaintiffs be restrained from maintaining their dam at such a height as would raise or maintain the waters of Sun lake at a higher level than they were in 1925 and preceding years.

The cause came on for hearing and was concluded in June, 1928. A decree was entered in December, 1928, determining that plaintiffs had acquired no rights to raise or lower the waters of Sun lake or back water on the premises owned by defendant corporation so as to raise those waters beyond their normal level, which was 100.5 according to a certain bench mark; that the defendant should construct a substantial concrete spillway between Sun and Loon lakes, the upper sill of which should not be less than 100.5 in height to be built on defendant's property; that the plaintiffs be restrained from raising the waters of Wolverine lake beyond 100.8. Both parties appeal and defendant claims error on the part of the trial court:

1. In determining the natural level of the waters of Sun lake to be, in terms of the permanent bench mark, 100.5;

2. In requiring defendant to construct a spillway between Sun and Loon lakes;

3. In restraining defendant from constructing any ditch or drain across the watershed from Sun to Loon lake, unless the same is provided with a spillway;

4. In determining the natural level of the waters of what is now called Wolverine lake to be 100.8, in terms of said bench mark;

5. In providing for a modification of the decree so as to require defendant to permit the construction, on its property, of a ditch and embankment, to separate the basin of Sun lake from the waters east thereof;

6. In requiring defendant to bear half of the cost of the services of Howard Barnett and Maurice Baldwin, in locating and constructing a spillway on defendant's property.

Plaintiffs contend that defendant knew of the building of the dam and without objection permitted

the plaintiffs to build many cottages, spend thousands of dollars upon improvements and are now guilty of laches.

The principal question involved in this cause is the effect upon Sun lake as a result of the building of the dam.

James Anton, a witness for defendant, purchased the property now owned by defendant and testified that from 1914 to 1925 the shores around Sun lake were not marshy but were pasture lands and that in 1927 the water in Sun lake was from 18 inches to two feet higher than in 1914 and that many trees died from being submerged in the rising water.

John W. Anton, a witness for defendant, occupied defendant's property from 1914 to 1920 and testified that the water had not risen during that period, but that in 1926 the water had risen and many trees had died as a result of the rising waters.

Eino Tila, a witness for defendant, testified as to the construction of a dock on defendant's premises 10 inches above the water, but that in 1926 this same dock was submerged in the water from four to six inches.

John Johnson, a witness for defendant, testified that the water in the lake had risen from 16 to 18 inches from 1925 to 1926; and that trees had died from being submerged.

Maurice E. Baldwin, an engineer engaged by defendant, took levels in 1926, and 1927 and found that the level of defendant's dock in 1926–1927 was 104.1 measured at upper boards of the top deck; in 1926 the lower deck measured 100.4 and remained the same in 1927. Assuming that the lower platform of the dock was 10 inches above the water in 1925, then the flash boards of the dam to maintain that level would have to be 2.6 feet below the eight-foot

level of the dam. These findings were confirmed by Robert McNamee, an engineer who had made elevations in 1927. He also testified that from elevations made by himself and Baldwin that the water level of Sun lake in 1925 was 99.6. Other witnesses were produced by defendant and their testimony as to the height that the water in Sun lake rose to and its effect upon growing vegetation is in harmony with the testimony already related. The plaintiffs produced one H. Barnett, an engineer, who took the level of Sun lake in May, 1925, and found it to be 101.36. We have analyzed the testimony in the record very carefully and conclude that the overwhelming weight of evidence in relation to the water level in Sun lake in 1925 confirms the claims of defendant.

The principal question in this cause is the right of plaintiffs to maintain a dam which interferes with the natural level of the waters of defendant's land.

In *Preston* v. *Clark,* 238 Mich. 632 (53 A. L. R. 194), we said:

"Underlying the rule of prescriptive rights rests the presumption of a grant, and in all cases the user, in order to create a prescriptive right, must be visible, continuous, and notorious, and must continue for the period required to secure, by prescription, rights in realty."

In *Rickels* v. *Log-Owners' Booming Co.,* 139 Mich. 111, we said:

"In order to sustain plaintiff's claim of rights by prescription, it is essential that the evidence should tend to show an exclusive enjoyment of the water substantially in the way claimed by the plaintiff or by his grantors, adverse to the rights of the defendant, and without interruption, for a period of at least 15 years."

See, also, *Kennedy* v. *Niles Water Supply Co.,* 173 Mich. 474 (43 L. R. A. [N. S.] 836); *Turner* v. *Hart,* 71 Mich. 128 (15 Am. St. Rep. 243); *Williams* v. *Barber,* 104 Mich. 31.

We do not think that plaintiffs have acquired such rights by estoppel.

In *Sheffield Car Co.* v. *Constantine Hydraulic Co.,* 171 Mich. 423, 452 (Ann. Cas. 1914 B, 984), we said, quoting with approval from note to *Penrhyn Slate Co.* v. *Granville Electric Light & Power Co.,* 181 N. Y. 80 (73 N. E. 566) in 2 Ann. Cas. 786, 787:

" 'Something more than mere passivity while the expense is being incurred is generally necessary to create the estoppel. In cases of silence there must be not only the right, but the duty, to speak before a failure to do so can estop the owner. Thus a person by merely standing by and failing to object while the improvements are being constructed, is not estopped from obtaining relief in equity against the diversion of the water, where the expenditure is made with notice, actual or constructive, of his superior rights.' "

In *Stone* v. *Roscommon Lumber Co.* (syllabus), 59 Mich. 24, this court held:

"The doctrine of acquiescence cannot apply where a complainant had no notice or knowledge of the creation of the nuisance complained of until it was erected, and never in person or by authorized agent consented to its creation or maintenance, but as soon as he had knowledge of its existence and the effect it would have upon his lands, made preparations to abate it and enjoined the completion of a new dam to take its place."

See, also, *Brockway* v. *Hydraulic Power & Light Co.,* 175 Mich. 339.

In the case of *Taylor* v. *Indiana & Michigan Electric Co.*, 184 Mich. 578, 589 (L. R. A. 1915 E, 294), this court said:

"It is and always has been the law in this State that a dam owner cannot raise the water in his pond so as to flood and damage the lands of riparian owners upstream, or so manipulate the discharge of waters from his dam that they will flood and damage the lands of such owners downstream."

See, also, *Hass* v. *McManus,* 161 Mich. 372.

A decree will be entered dismissing plaintiffs' bill of complaint and granting an injunction restraining plaintiffs from operating their dam so as to raise the water of Sun lake higher than existed in 1925, namely 99.6 according to Baldwin's bench mark. Defendant may recover costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and TOY, JJ., concurred. POTTER, J., took no part in this decision.