HALSTEAD *v.* YOUNG.

1. WATERS AND WATERCOURSES—DAMS—HEAD OF WATER—FLOWAGE.
   While a head of water at a dam is the vertical distance from the water in the flume or place from which it is drawn, to the tailrace, in construing grant of right to flow uplands by maintaining a certain head of water, conditions existing at time grant was made should be considered, since such a definition of head of water contemplates maintenance of *status quo* so far as the level of the creek in the tailrace is concerned.

2. SAME—DAMS—HEAD OF WATER—GRANT OF FLOWAGE RIGHTS.
   Decree fixing 9-foot head of water at dam as measured from present cement butment *held*, proper as within grant of right to overflow plaintiffs' lands wherein original grantee, one of defendants' predecessors, was authorized to maintain a 7-foot head, but evidence shows such measurement extended to water plate of turbine water wheel which plate is no longer used and was a foot above level of water of tailrace as then existing and there has been a subsequent lowering of the water in the tailrace by removal of stones and debris from the bed of the stream below the water wheel.

3. SAME—FLOWAGE—PRESCRIPTION.
   The exercise of the right of flowage for 15 years and upwards creates a prescriptive right and gives title to the property, so far as the right to flow is concerned, as fully as if conveyance were had by deed.

4. SAME—FLOWAGE—PRESCRIPTION—EVIDENCE.
   In suit involving maintenance of water level above defendants' dam, weight of evidence *held*, to support trial judge's finding that present level of water in mill pond had been maintained for a continuous period in excess of 15 years, with exception of certain occasions when water was lowered at request of upland owners, hence defendants acquired a right by prescription to flood lands owned by cross-defendants.

5. JUDGES—SUCCESSORS—EQUITY—REHEARINGS.
    Under statute empowering a successor judge to a judge who had
        made finding of fact in chancery case and died prior to signing
        a final decree to proceed the same as if the opinion had been
        rendered by the successor himself, the successor may, for
        proper cause shown, grant a rehearing (3 Comp. Laws 1929,
        § 13902).

Appeal from Oakland; Doty (Frank L.), J. Submitted October 7, 1937. (Docket No. 66, Calendar No. 39,626.) Decided December 15, 1937.

Bill by Ward H. Halstead and wife against Harold Young and Abi Young to restrain the raising of water in a dam, for money decree and other relief. Cross-bill by defendants against plaintiffs, Louis Jaenichen, Laura Jaenichen, and D. A. Hayward to establish water rights, for an injunction and other relief. From decree rendered, plaintiffs and cross-defendants appeal. Affirmed.

*Neithercut & Neithercut,* for plaintiffs and cross-defendants.

*Robert D. Heitsch,* for defendants.

BUSHNELL, J. Three questions are involved in this appeal.

Was Judge Doty, of the circuit court for the county of Oakland, in error when he granted a rehearing in a chancery cause heard by the late Judge Covert, after a finding of facts had been signed and filed but in which no decree had been entered by Judge Covert previous to his death?

Are defendants Young and wife, in the words of appellants "entitled to maintain more than an eight-foot head of water at the dam on their property?"

Did defendants Young and wife acquire a prescriptive right to back water upon the lands owned by D. A. Hayward, one of the defendants and appellants?

The appeal before us has to do with the maintenance of a mill dam and the operation of a water wheel in Thread river and on certain lands in section 18 of Groveland township, Oakland county. In 1893 the lands now owned by defendants Young were the property of Abram D. Perry who, on February 26, 1894, obtained a deed from Silas Downey and wife, the owners, and Benjamin Scott, the mortgagee of certain uplands, whereby Perry was granted the right to use the waters of Thread river, maintain a mill dam and flow the lands of his grantors. This conveyance provided for the use of sufficient water to run a feed and saw mill and permitted Perry to maintain the mill dam "to such a height as shall raise the water in said stream at the mill dam aforesaid to a point 7 feet above the level of the water plate of the water wheel of the said feed and saw mill."

In 1925 Brace and wife acquired the rights of Perry's heirs by a quitclaim deed containing the following language:

"Also the right to build, repair and maintain a dam in said property for the purpose of forming a mill pond and to raise and lower said pond at will for power purposes to a point which shall not exceed an 8-foot head of water at said dam, and all the rights enjoyed by Abram D. Perry to back water on said stream upon the land of other owners above the land herein described on said stream."

Brace and wife subsequently conveyed to Young and wife, the present defendants and appellees, these mill lands and all of their flowage rights on

Thread river. This conveyance, like the one from the heirs of Perry to Brace, speaks of "an 8-foot head of water at said dam."

The original improvements were installed by Perry in 1893 and consisted of a dam, flume, penstock and turbine water wheel. Although the facts are disputed, the record shows that the original penstock was constructed in part of a three-inch plank, across which was a one-inch board, and on this the original water wheel rested; the flange of the wheel standing in about three inches of water when not in operation. Some time thereafter one of the concrete footings settled and the old flume, penstock and wheel were replaced by new ones. Evidences of the location of the old wheel and penstock still remain but following the reconstruction defendants lowered the water in the tailrace by removing stones, sand and debris from the bed of the stream, below the water wheel.

Plaintiffs contend that defendants' flowage rights depend upon the terms of the deed from the Perry heirs to Brace and from the latter to Young and wife, both of which deeds speak of "an 8-foot head," and they argue that the lowering of the water in the tailrace created a 9-foot head which was unauthorized by these grants. It is true that this court has defined "head" of water as "the vertical distance from the water in the flume or place from which it is drawn, to the tailwater." *Tebbel* v. *Spencer Electric Light & Power Co.,* 173 Mich. 136, following *Shearer* v. *Middleton,* 88 Mich. 621. However, the grant of a right to flow uplands should be construed "in accordance with the conditions as they existed at the time the grant was made." *Tebbel* v. *Spencer Electric Light & Power Co., supra,* at page 140.

The definition of the word "head" contained in the *Tebbel* and *Shearer Cases, supra,* contemplates the maintenance of the *status quo* so far as the level of the creek bed in the tailrace is concerned, and merely affords a measure for fixing the permissible level of the water in the mill pond. Consequently plaintiffs' rights as against defendants Young depend upon whether these defendants have raised the level of the water in the mill pond higher than that permitted by their grant. The trial court said that a reasonable analysis of the disputed testimony justified the conclusion that, with the exception hereinafter noted, defendants' (Young) use of the water was in conformity with the language of their grant. We see no reason to disturb that conclusion.

The court did find, however, that, by reason of flashboards having been placed at the top of the gate of the flume, the water in the mill pond was some six inches higher than that permitted by the grant. Court and counsel inspected the premises and the trial judge was fully acquainted with the physical facts. Defendants are required by the trial court's decree to regulate the flashboards of the dam so that "the water at all times shall not exceed such height of nine feet above said cement butment, and said measurements shall be from the crest of the water in the dam to level of the top of said cement butment where it is now located, and the boards in said flume shall be so adjusted at all times so that the water shall not rise above such nine-foot head, as herein fixed."

This decree, in our opinion, does not permit defendants to flow more lands than that permitted by the recorded grants.

Some confusion has arisen because of the difference between the language in the original and subsequent grants. The first established the permitted

height of water by reference to a ''point 7 feet above the level of the water plate of the water wheel,'' and the others by the use of the words an ''eight-foot head of water.'' However, if we were to test the rights of these parties by the terms of the original grant, the result would be the same. We have been unable to ascertain, and counsel have been unable to tell us, the precise meaning of the words ''water plate of the water wheel.'' Those who knew what these words meant in the original grant were no longer available at the time of the trial. However, Judge Doty, attaching great importance to the testimony of Walter Downey, the son of the original grantor, found that ''the water plate of the water wheel'' was the top of the turbine and the original turbine was one foot in height above the level of the water in the tailrace and that, therefore, the original grant permitted a distance of seven feet from the top of the turbine to the surface of the mill dam, and, in effect, an eight-foot head of water from the level of the water in the tailrace, thereby conforming to both the seven-foot distance expressed in the Downey-Perry deed and the eight-foot head expressed in the deed from the Perry heirs to the Braces.

The lands owned by appellant Hayward were not included in the grants previously discussed herein and defendants' right to flow these lands depends upon whether they have acquired a right to do so by prescription. The law pertaining to acquisition of flowage rights by prescription is found in *Williams v. Barber,* 104 Mich. 31, which says:

''The rule is well settled that the exercise of the right of flowage for 15 years and upwards creates a prescriptive right, and gives title to the property, so far as the right to flow is concerned, as fully as if the right were conveyed by deed.''

See authorities therein cited, and also *Preston* v. *Clark,* 238 Mich. 632 (53 A. L. R. 194); *Stuart* v. *Detroit Finnish Co-Op. Summer Camp Ass'n,* 277 Mich. 144.

The record contained considerable conflicting lay and expert testimony with respect to the height of water in the mill pond and the extent of the lands flooded thereby. In this connection the trial court observed:

"Some of the witnesses produced on the part of the plaintiff were old, and the court felt at the time of hearing that some of them were using their imaginations rather than sound memory. There was direct conflict in this testimony, witnesses on one side saying that at no time was the water covering the land in question, now owned by Hayward, and that they cut hay on the land now covered by water, and that many trees have died as a result of the water being higher at this time. There was also considerable testimony about the water under an old bridge and the distance of water from certain trees. On the other hand the witnesses for the defendants testified that this land was overflowed at various times and that they skated on the property during the winter time and that, when it became necessary to cut the hay or to do other work on the land, permission was obtained from the owner of the dam to lower the water. The court is inclined to believe the more reliable testimony on this particular feature of the case is with the defendants, and for this reason they gained a right by prescription to flood the lands now owned by Hayward, having enjoyed adverse possession of it for the necessary period of time."

The weight of the testimony supports Judge Doty's finding that the present level of the water in the mill pond has been maintained for a continuous

period in excess of 15 years, with the exception of certain occasions upon which the water was temporarily lowered by request of certain upland owners. Defendants have, therefore, acquired a right by prescription to flood the lands now owned by cross-defendant Hayward and others.

The question as to the right of Judge Doty to grant a rehearing in a cause heard by the late Judge Covert and in which he had not entered a decree is covered by statute and rule. See Court Rule No. 48 (1933), and 3 Comp. Laws 1929, § 13902. We quote the latter:

"In all suits in chancery now or hereafter pending in any circuit court of this State when a circuit judge thereof has died, or shall die, before signing a final decree and after filing a finding of fact or rendering an opinion upon proofs submitted and arguments of counsel disposing of all or part of the issues therein involved, his successor shall be and he is hereby authorized and empowered to proceed with said suit, in a manner consistent with said finding or opinion, and he is hereby given the same powers that he would have had if said finding of fact had been made or said opinion had been rendered by said successor himself."

Had Judge Doty tried the case in the first instance, his right to grant a rehearing on proper grounds could not be questioned. In view of the statute, *supra,* he could grant a rehearing under the present circumstances.

The decree is affirmed, with costs to appellees.

FEAD, C. J., and NORTH, WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred.