JOHN A. SWAN v. ANNA MUNCH.

JOHN R. JOHNSON v. SAME.

JOHN HOTIN v. SAME.

CHARLES T. CARLSON v. SAME.

AUGUST C. CARLSON v. SAME.[1]

July 15, 1896.

Nos. 10,052, 10,053, 10,054, 10,055, 10,056—(258, 259, 260, 261, 262).

**Water Rights—Adverse Possession—Continuous Use.**

A wrongful entry upon land under a claim of right, inconsistent with the title of the true owner, with continued possession and the exercise of acts of ownership hostile to the rights of the owner, but without any pretense of paper title, may ripen into title by prescription. Village of Glencoe v. Wadsworth, 48 Minn. 402, followed. This rule applies to an easement in real property. And where the claimant needs the use of the property from time to time, and so uses it, this is a sufficiently continuous use to be adverse, although it is not constant. Rule applied in this case, and *held*, that the building of a dam across Snake river and the continued adverse use of the dam, whereby the water of the river was obstructed, and thereby overflowed plaintiff's land during the months of April, May, and June in each year, for the purpose of sluicing logs, for a period of fifteen years, was sufficient to create an easement in plaintiff's premises by prescription during the said three months in each year.

Five actions in the district court for Pine county. The cases were tried together, and at the close of the testimony defendant made a motion that the court instruct the jury to find for defendant in each case, which was denied. The jury rendered a verdict in each case in favor of plaintiff, in the sum of $190, $195, $125, $50, and $185, respectively. From an order, Crosby, J., denying a motion for a new trial in each case, on the ground that the verdict was not justified by the evidence, and was contrary to law, and because of errors of law occurring at the trial and duly excepted to, defendant appealed. Reversed.

*Robertson Howard* and *S. G. L. Roberts*, for appellant.

*L. H. McKusick* and *J. C. Nethaway*, for respondents.

[1] Reported in 67 N. W. 1022.

BUCK, J. Five separate actions were brought by different plaintiffs, all against the same defendant, Munch, to recover damages caused by the overflowing of a portion of the lands owned by each of the respective plaintiffs by the operation of the Chengwatona sluicing dam on Snake river, which was originally built in 1849.

The material allegations in each complaint are as follows:

"That on or about the month of September, A. D. 1876, the defendant erected a dam to a great height across the Snake river, at the town of Chengwatona, in said county and state, and below the plaintiff's land above described, and ever since has kept the same up, and has thereby obstructed and stopped during all that time the natural flow of the water of said river, and raised it up in the bed of said river, and backed it up upon said land during the months of April, May, and June in each year, and at other times, injuring, destroying, and rendering said land unsuitable for agricultural purposes, for which said lands are chiefly adapted."

By reason of the facts alleged, each plaintiff claimed damages for the years 1891, 1892, 1893, 1894, and 1895. Defendant, in her answer, put in a general denial, and then alleged as follows:

"That the dam mentioned in the complaint was erected in the year 1849, and has ever since been maintained and operated; that said dam, for more than twenty years prior to 1890, and up to the present time, has been owned by her, and has been so maintained and operated by her; that during all of said time the waters of said Snake river have been raised by said dam and set back so as to cause that portion of the land described in the complaint which it is alleged therein has been injured by the operation of said dam to be continuously, uninterruptedly, adversely to the owners thereof, and under claim of right on part of defendant so to do, submerged and overflowed."

By stipulation the five cases were tried together, and a separate verdict was rendered in each case in favor of the plaintiff.

In the months of October and November, 1877, the dam had become rotten and was rebuilt, and substantial repairs were made upon it in 1887, considerable improvements made upon it in 1889, and the north wing rebuilt about the winter of 1894. More or less repairs were made upon the dam annually. The testimony on the part of the defendant showed quite conclusively that she or her predecessors have been in the open, visible, hostile, notorious, and continuous possession of the dam for more than 15 years prior to the commencement of this action, and that this condition applied to the

portion of the premises of the different plaintiffs in controversy during the months of April, May, and June of each year during that period of time by reason of the natural flow of water in Snake river having been obstructed and stopped by the dam, which caused the water to overflow the natural channel of the river, and flow back upon the plaintiffs' lands, destroying the grass thereon growing, and rendering the land unfit for raising crops.

In the case of Dean v. Goddard, 55 Minn. 290, 291, 56 N. W. 1060, this court held:

"The intent to claim by adverse possession may be inferred from the nature of the occupancy, and the possessory acts necessary to constitute adverse possession depend upon the character of the property, its location, and the purposes for which it is ordinarily fit or adapted. Actual residence upon the premises is not necessary, nor is it incumbent upon the adverse possessor to make oral declarations of his adverse claim. The mere fact that time may intervene between successive acts of occupancy while the party is temporarily absent engaged in business,—as in cutting logs to be sawed into lumber to be piled and stored on the premises by such party,—will not destroy his continuity of possession."

A wrongful entry upon land, with continued possession, without any pretense of paper title, but under a claim of right inconsistent with the title of the true owner, and the exercise of acts of possession hostile to his rights in the land, may ripen into title by prescription. Village of Glencoe v. Wadsworth, 48 Minn. 402, 51 N. W. 377. Such use or adverse possession must be enjoyed by actual entry, and under such circumstances as will indicate that it is claimed as a matter of right. The true owner's rights must be invaded by such hostile acts as would constitute grounds for action against the adverse claimant or intruder, and under such circumstances as to make the possession appear to be for the benefit of the claimant. Is this doctrine applicable to an easement in real property, where the essential elements necessary to constitute adverse possession exist only three months in the year, and where during the other nine months of the year the premises are in the actual use and possession of the owner in fee? We answer this question in the affirmative.

During the months of April, May, and June in each recurring season there has been a continuous use of the premises by the defendant or her predecessors by overflowing them with water for the purpose

of floating logs down the Snake river to the sawmills and to the markets of the country. Where the claimant needs the use of the easement from time to time, and so uses it, there is a sufficiently continuous use to be adverse, although it is not constant. Cornwell Mnfg. Co. v. Swift, 89 Mich. 503, 50 N. W. 1001; Hisperia L. & W. Co. v. Rogers, 83 Cal. 10, 23 Pac. 196. It is evident that the building of this dam in 1849, and its use since then for raising water three months in each year for sluicing logs, indicates that such purpose was intended not to be temporary, but permanent, and is greatly for the benefit of the public in assisting it thus to have their logs conveyed from the great pine regions of the state to the mills and markets of the country. Its use for such purpose probably would not be either practicable or profitable more than the three months named, with each recurring year. It is a matter of public notoriety, as well as a matter of evidence in this case, that these great log drives are moved during the months named in each year, and to keep up this flow of water during this entire period would be useless to the public, and expensive to the defendant. Other than during the three months named, the plaintiffs have the use and benefit of the premises, and as the defendant uses it only when her needs and public necessity requires her to do so, this is a continuous use, and an omission to use it when not needed would not disprove a continuity of use, or defeat her right to an easement by prescription. The premises are situated several miles distant from the dam in question, and, notwithstanding their annual overflow by reason of the erection of the dam, none of the plaintiffs appear to have raised any objections thereto, but they seem to have acquiesced therein. They well knew of the hostile acts of the defendant, by thus overflowing their lands, who thus unmistakably indicated an assertion of right to enjoy the use of the premises, and the purpose for which it was so used. When defendant assumed possession and use of the premises the plaintiffs would stop using it, and only resume its use when defendant's occupancy again ceased. There was no trick or artifice on the part of the defendant, but an open and notorious taking possession of the premises by the defendant for her use and needs, and whereby the public were also benefited. These acts were notice to the owners that defendant was occupying the premises under a claim of right.

When there has been a continuous use of an easement for 20 years, unexplained, it will be presumed to have been under a claim of right, and adverse, and will be sufficient to establish a right by prescription, and authorize the presumption of a grant, unless contradicted or explained. Washburn, Easem. (4th Ed.) p. 156, § 31, and cases cited in note 5. Carmody v. Mulrooney, 87 Wis. 552, 58 N. W. 1109. Under the laws of this state the 20-years use has been changed to 15.[2] There was no controversy as to the use of the premises by the defendant for the period of 15 years, she using them when she saw fit during the three months named, without asking leave of the plaintiffs, and without objection; and such uninterrupted enjoyment for that period gives a title or easement by adverse possession for the three months each year. If there was any serious question whether the claimant entered upon the property under claim of right or title with intent to oust the owner, that question would doubtless have to be submitted to the jury. But the actual entry and continuous use of the premises by defendant for a period of 15 years were admitted or conclusively proven. The plaintiffs contend that defendant's entry was tortious, and therefore could not be under claim of right; but, as we have already stated, this is immaterial. There was no evidence introduced which tended to rebut the presumption arising from the 15-years use of the premises by defendant that she was in possession and so using it under a claim of right and adversely; hence there was no controverted question of fact upon this point to be submitted to the jury.

Order reversed.

[2] Laws 1889, c. 91, § 1.