HENRY L. SIMONS v. EMIL MUNCH and Others.[1]

March 19, 1909.

Nos. 15,877—(180).

**Adverse Possession—Maintenance of Dam.**

Title [2] to lands by adverse possession may be acquired by the construction and maintenance of a dam across a stream, thereby causing the lands to be continuously submerged for the statutory period.

**License to Construct Dam.**

Public statutes, which authorize boards of county commissioners to grant licenses for the construction of dams across streams navigable for logs and lumber, are intended for the benefit and protection of the public, and do not have the effect of limiting the easement to that purpose, as to the owners of the submerged land.

[1] Reported in 120 N. W. 373, 121 N. W. 373.  [2] See pages 374, 375.

Action in ejectment in the district court for Pine county to recover possession of lands submerged by defendants and for $2,000. The case was tried before Stolberg, J., who made findings and as conclusion of law found in favor of defendants. From an order denying plaintiff's motion for a new trial, he appealed. Reversed.

*Clapp & Macartney, S. G. L. Roberts,* and *J. W. Reynolds,* for appellant.

*Charles Bechhoefer, Robert C. Saunders, L. H. McKusick,* and *J. N. Searles,* for respondents.

LEWIS, J.

Action in ejectment to recover possession of lands submerged by the Chengwatuna dam on Snake river in Pine county. This dam was constructed prior to 1869 to create a head of water in Snake river for the purpose of improving the navigable character of the stream for logging and lumbering. For many years the dam was owned and maintained by Adolph Munch, and has been a prolific source of litigation.

The trial court found: "That the defendants, their predecessors and grantors, have been in the open, visible, hostile, notorious, and continuous possession of said dam for more than fifteen years prior to the commencement of this action, and defendants have been in such possession for more than thirty seven years prior to the commencement of this action, and such possession has been continuous, uninterrupted, and adverse, under claim of right on the part of said defendants, and their predecessors and grantors, and that said plaintiff, his ancestors, predecessors, and grantors, have not been seised or possessed of the premises in the complaint described as flooded within more than thirty seven years prior to the commencement of this action." The court further found that the lands described in the complaint had, during all of such periods, down to the year 1903, been continuously overflowed by reason of the construction and maintenance of the dam; that for some time prior to 1878 the water power created by the dam was used for running a sawmill and gristmill, and that in 1903 the dam was partially destroyed, and was rebuilt in 1904; that since 1903 the dam has not been used for the navigation of logs by the public generally, but only by respondent McGrath for his own private purpose of floating logs to the sawmill located on Cross lake, above the dam.

It is claimed by appellant that the dam was originally constructed as a log sluicing dam, and was authorized under the statutes of 1853. However that may be, chapter 50, p. 173, Laws 1861, authorized boards of county commissioners to grant licenses for the construction and maintenance of dams across streams for the purpose of sluicing logs and lumber, and referred to a dam in Snake river, Pine county, fixing the toll for sluicing at ten cents per thousand feet. Whether the dam in question is the one referred to in that act does not definitely appear from the evidence; but the fact may be admitted for the purposes of this case. Appellant's position is that the owners of the dam acquired an easement in the stream for the single purpose of sluicing logs and lumber, and that when the dam was abandoned for that purpose in 1903 it must be deemed to have been abandoned for all purposes as to the owners of the submerged land. Appellant concedes the fact of continuous overflow of his lands ever since the dam was erected, but invokes the principle that, where an easement is acquired by prescription, the extent of the right is fixed and determined by the user in which it originated, and that the use of an easement by prescription is limited, both as to its character and its extent, by the use by which the right was established; or, as otherwise stated, where an easement in land has been acquired for a public use, and that use has been abandoned, the easement is at an end, and the owner is restored to his original rights in the land.

Such is the rule of law with reference to easements in general, but it has no application to the facts in this case. The misapprehension in the application of the principle arises from a misconception of the effect of the statute referred to. Enactments of that character are intended for the protection of the public, and have no reference to the relation and rights which may arise between the owner of the dam and riparian owners whose lands may be affected by the improvement. The statute required parties who chose to erect and maintain dams upon streams suitable for the navigation of logs to proceed in conformity with the act, in order that those having occasion to use the streams might be properly protected in their natural rights. Anderson v. Munch, 29 Minn. 414, 13 N. W. 192.

So far as the state was concerned, the owner of the bank was at liberty to construct and maintain the dam so long as it did not consti-

tute an interference with the navigable rights of the public in the stream, and the state had no authority to authorize the construction of a dam across the river without providing for compensation to all parties who might be damaged thereby. It is the well-settled law of this country that the legislature cannot authorize the flooding of lands without compensation to the owner, and the right to flood land by extending a dam across such streams may be acquired by adverse possession for the statutory period. Swan v. Munch, 65 Minn. 500, 67 N. W. 1022, 35 L. R. A. 743, 60 Am. St. 491. A riparian owner has the right, without license from the county commissioners, to construct a dam which does not obstruct or interfere with the navigation of the stream. This is a right which is appurtenant to the ownership of the bank. Kretzschmar v. Meehan, 74 Minn. 211, 77 N. W. 41.

According to the findings of the trial court, appellant and his grantors stood by, without protest, for the period of thirty seven years. They were not justified in assuming that their rights as owners would be restored upon abandonment of the purpose for which the dam was maintained during all those years. Whatever may have occurred in 1903 with reference to a change in the use of the dam, has no bearing in this case, since long before that time the title to the premises involved passed from appellant's grantors.

Affirmed.

JAGGARD, J. (dissenting).

I dissent. In my opinion the evidence shows that the dam in question, so far as here involved, has always been a sluice dam, that the easement acquired was for a sluice dam only, and that its continuance is no longer justifiable. The submergence of the land in consequence of the very nature of the operation of a sluice dam was not continuous. It is elementary that the adverse claim of right must be supported by a consistent user. 9 Columbia L. Rev. 267. The authorities cited in plaintiff's brief sustain his position. See also Attorney General v. Great Northern, 1908, 99 L. T. (N. S.) 695.

On June 25, 1909, the following opinion was filed:

PER CURIAM.

Appellant claims the dam was originally constructed exclusively for the purpose of creating a head of water to sluice logs over the rapids

below the dam; that the lands were flooded for·that purpose only, that the dam was always maintained and used exclusively for that purpose until 1903; that the easement thus acquired was extinguished in 1903 by the cessation of log sluicing, the dam at that time having been diverted to new and different uses. The trial court found that the dam was constructed and used for the purpose of creating a head of water in Snake river and for the purpose of raising the volume of water in that stream to improve the navigable character thereof for logging and lumbering purposes, and upon motion to amend the findings, refused to find that the dam was constructed and maintained exclusively as a sluice dam.

According to the evidence, all logs cut on the stream above the dam prior to 1903 were destined to points on the St. Croix river, and were sluiced through the dam. Logging and lumbering was conducted, to some extent, all along the river prior to 1903, and for several years subsequent to 1903 lumbering was still conducted on the stream above the dam, but the logs were converted into lumber at mills above, and were not sluiced through the dam. The finding that the dam was created for the purpose of increasing the navigation of the river for logging and lumbering is not inconsistent with the claim of appellant that the main object was to sluice logs over the rapids below the dam. The evidence is meagre with reference to the use of the dam prior to 1903, but is not conclusive that the easement acquired was limited to the sluicing of logs. Although the dam was employed to run a saw mill and a corn cracker mill, that use was limited to a short time, not later than 1878. So far as we understand the case, the position contended for by appellant depends upon whether the general logging and lumbering carried on during the entire period before 1903 was a mere incident to the sluicing of logs, or whether such logging and lumbering can be regarded as an independent business with reference to which the dam was erected and maintained. The findings are somewhat indefinite and should have been made more specific on plaintiff's motion, and we have come to the conclusion that a new trial should be granted in order that the entire subject may again be presented to the trial court.

Attention has been called to certain language in the syllabus, and in the closing part of the opinion, which might indicate that it was the

view of the court that title to the fee of the lands was acquired by adverse possession. Such was not the intention, although the language used may be subject to that inference. It is only necessary to state that the word "title," as there used, refers not to the fee but to the right acquired to maintain the dam.

New trial granted.