## EMIL MUNCH and Others v. JAMES E. McGRATH.[1]

### February 6, 1914.

### Nos. 18,382—(215).

**Lease of dam — recovery from lessee of damages to landowners.**

> A lease by plaintiffs to defendant of a dam required the lessee to repair the dam and to keep it in repair and to pay a fixed annual rental for its use. Under the facts in the case it is *held* that the lease contemplated the use of the dam for the purpose of floating logs down the stream to the dam, and for no other purpose; that the lease was an assertion of the right of the lessor to lease the dam for that purpose and of the lessee to use it for that purpose; that a provision in the lease that the lessees should use the dam in a lawful manner and not do or suffer anything unlawful to be done in and about the demised premises, or in the use thereof, was not intended to forbid this contemplated use; and that the lessors, having been compelled to pay damages to landowners on account of flooding caused by this use, cannot recover from the lessee the whole or any part of the amount so paid.

Action in the district court for Washington county to recover $3,469, the amount of judgments recovered against plaintiffs in actions against them by persons whose lands had been flooded by defendant's use of the dam rented by him from plaintiffs. The case was tried before Stolberg, J., who made findings that the action be dis-

1 Reported in 145 N. W. 163.

missed and that defendant recover his costs and disbursements. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*O'Brien, Young & Stone* and *Charles Bechhoefer,* for appellants.

*J. N. Searles,* for respondent.

PER CURIAM.

For many years plaintiffs and their predecessors in title were the owners of the Chengwatonna dam, on the Snake river near Pine City. The dam was constructed with sluice-gates through which logs were driven over the dam, and it was used as a sluice-dam for many years, down to and including 1902, so long in fact that plaintiffs' ancestors and predecessors in title had acquired a prescriptive right to flow adjacent lands as an incident to the use of the dam for sluicing logs. Swan v. Munch, 65 Minn. 500, 67 N. W. 1022. In 1903 the dam was partly destroyed. Defendant owned standing timber adjacent to the Snake river above the dam and desired to build a sawmill at or near the dam. In the fall of 1903 he approached Emil Munch, one of the plaintiffs and the agent of the other plaintiffs, for the purpose of leasing the dam. His plan was to use the dam, not for the purpose of sluicing logs over the dam, but to float them down either to his mill or to a point from which he could ship them by rail. He made this purpose known to Munch. During the negotiation that followed, Munch represented to defendant that plaintiffs had the right to hold at least nine feet of water in the dam. Defendant stated that he should not want to maintain over seven feet of water. The banks of the stream were so low that the maintenance of the dam for any purpose caused an overflow upon the lands above the dam. At that time plaintiffs believed that they had acquired a prescriptive right to maintain the dam and overflow the land for any purpose for which the dam might be used. In this they were mistaken. Their prescriptive right was to overflow only for the purpose of maintaining the dam for the purpose of sluicing logs. Simons v. Munch, 115 Minn. 360, 132 N. W. 321.

On September 19, 1903, plaintiffs made a lease of the dam to defendant until September 21, 1906, with a provision for extension

to October 1, 1907, under certain conditions, without additional payment of rent. The lease provided for a rental of $1,000 a year, provided as one of the considerations thereof that the lessee should repair the dam and restore it to the condition it was in prior to its destruction, and should keep the dam in a proper state of repair during the term of the lease. The lessee covenanted and agreed "that he will at all times use said dam in a lawful manner and will not do or suffer anything unlawful to be done in and about the demised premises or in the use thereof." It was further agreed "that if, during the term of this lease, the premises shall be in any manner injured, damaged, or destroyed, though * * * without the fault of said second party, this lease shall nevertheless continue in force," and if "it becomes impossible to use the demised property for sluicage purposes or for any other purposes for which the same are adapted, and such condition is brought about without the fault of the lessee, yet this lease shall continue in full force and effect until the expiration of the term above set forth."

In March, 1904, this lease was surrendered by defendant, and another lease with similar terms was executed by plaintiffs to Joseph McGrath. This lease was assigned to defendant and he assumed its covenants, agreements and conditions.

On October 11, 1907, a third lease was executed, leasing the dam for another year on similar terms.

None of these leases contained any express covenant or condition as to the manner in which the dam should be used.

In 1904 defendant repaired the dam at his own expense, and during the term of the last two leases he used it to create a head of water not exceeding seven feet, in accordance with his plan previously disclosed to Munch. No logs were sluiced over or through the dam. The maintenance of the dam caused the lands of adjacent owners to be flooded. Adjacent owners brought action against both plaintiffs and defendant for substantial damages sustained by reason of flooding caused by maintaining this dam during the years 1905, 1906, 1907 and 1908. The parties suing recovered judgment against all parties. Plaintiffs under compulsion paid this judgment, amount-

ing to $3,850.75, and commenced this action under Revised Laws 1905, section 4281, to recover the amount so paid.

The trial court found that defendant did not, as between the plaintiffs and defendant, make any unlawful use of said dam, but that the use made by defendant of the dam was lawful under the lease, and the court ordered judgment for the defendant, holding in effect that, as between them, the plaintiffs were primarily responsible for the damages sustained by landowners on account of the flooding of their lands.

A majority of the court are of the opinion that the view of the trial court is right; that the lease contemplated the use of the dam for the purpose of floating logs to the dam, and that such was the only use contemplated; that the lease, taken in connection with all the facts and circumstances, was an assertion of the right of plaintiffs to lease it for that purpose, and of the defendant lessee to so use it; that the provision in the various leases that the lessee should use the dam in a lawful manner, and not do or suffer anything unlawful to be done in and about the demised premises or in the use thereof, was not intended to forbid this contemplated use; and that plaintiffs are not entitled to recover from defendant either the whole or any part of the amount paid by them as damages caused by such use of the dam.

Order affirmed.