HAAG v. LAWRENCE LUMBER COMPANY, INCORPORATED.

[No. 13,086. Filed January 4, 1929.]

*Raymond F. Murray,* for appellant.
*McTurnan & Higgins,* for appellee.

NICHOLS, J.—Action on guaranty, by appellee to recover from appellant the purchase price of lumber and material sold to one Hammond and used in the construction of buildings at "Jack O'Lantern Gardens." There being special findings of fact and conclusions of law, and it appearing that the facts have been fully and correctly found, we give no consideration to alleged errors pertaining to the pleadings. It appears by these findings that appellee is engaged in the retail lumber business

at Lawrence, Indiana; that appellant is a resident of Marion county, Indiana, and that she, on or about August 9, 1924, signed an instrument as follows: "Mr. VanCleve—Allow Carlos C. Hammond any credit he may need to finish work started at his Garden as I'll see to it that he pays for the same. (Signed) L. C. Haag"; that Van Cleve is the same person as Henry T. VanCleve and was the general manager and employee of appellee and was engaged in such employment and no other; that said instrument was executed by appellant to Carlos C. Hammond and, after execution, was delivered to said Hammond and by him delivered to VanCleve at the office of appellee on August 9, 1924; that it was executed for the purpose of enabling Hammond to obtain credit from appellee, and was addressed to and delivered to said VanCleve as the agent of and for the benefit, use and assurance of appellee; that prior to the execution and delivery thereof, Hammond had started the work referred to therein, which was the construction of buildings at his gardens, and had obtained building material in the amount of $1,101.05, for such work on his credit from appellee, but that appellee had refused him further credit; that after the delivery of such instrument by said Hammond to appellee, relying upon said instrument and the statements therein contained and the credit of appellant, it sold and delivered to Hammond at his gardens, lumber and material for the work which he had started prior to August 9, at said gardens, and that the lumber and material so sold and delivered to Hammond after August 9, and before September 8, 1924, was in the total amount of $3,187.53; that prior to August 9, 1924, Hammond paid appellee $633.61 for lumber and material delivered to him at his gardens, and subsequent to September 9, 1924, he paid to appellee on account for lumber and materials so delivered $776.85; that no other payments were ever made to appellee for lumber and materials

so delivered at said gardens; that Hammond made no request that such payments as were made should be applied to any particular items of said account; that said payments, when made, were not specifically applied by appellee to the debits of said account; that appellant, at different times after August 9, 1924, visited the gardens of Hammond and there saw the construction that was being done with the lumber and material furnished by appellee; that, on or about September 9, 1924, appellant was informed by appellee that it had furnished lumber for the construction of Hammond's gardens; that on March 19, 1925, appellant was requested by appellee to comply with the terms of the guaranty and to discharge her obligation to appellee; that appellant has made no other payments, and that said account is now past due and owing, and the payment thereof by appellant has been long and unreasonably delayed from March 19, 1925; that on September 8, 1924, appellant signed the following instrument:

"September 8, 1924.
"Lawrence Lumber Company,
"Lawrence, Indiana.
"Gentlemen:
"In consideration of your supplying Carlos C. Hammond with lumber and merchandise upon credit, I agree to and hereby guarantee you the payment for such lumber and merchandise in a sum not to exceed Three Hundred Dollars.
"Lenora C. Haag."

That after September 8, 1924, no further lumber was furnished to Hammond by appellee for his gardens under and in reliance upon the instrument sued on.

The court stated as conclusions of law on the facts found that all payments by Hammond on said account made subsequent to August 9, 1924, to wit: $776.85, should be applied to the credit extended subsequent to said date, and that no part of the same should be applied

to debits occurring prior thereto. That judgment should be entered in favor of appellee for the principal sum of $2,101.27, with interest thereon at six per cent. per annum from March 19, 1925, until the date of judgment.

And the court rendered judgment on its conclusions of law in favor of appellee for $2,101.27 and interest thereon from March 19, 1925.

From these findings, which are amply sustained by the evidence, we do not see how the court could have reached any other conclusions as to the law than the ones which it reached. Certainly, they were as favorable to appellant as she had reason to expect.

Appellant's contentions that the agreement or guaranty is too indefinite, that it is collateral, that there was no notice of acceptance, or of Hammond's default, and that there was no showing of diligence on the part of appellee in attempting to collect the account guaranteed, are each and all without merit. In *Stewart* v. *Knight & Jillson Co.* (1906), 166 Ind. 498, 76 N. E. 743, there was a guaranty similar in effect to the one here involved, and the court there held against appellant's contentions, which were substantially the same as appellant's contentions herein. See, also, *Bishop* v. *Eaton* (1894), 161 Mass. 496, 37 N. E. 665.

Appellant contends that the amount of recovery is too large, in that interest is included therein, presenting that a guarantor of an open account is not liable for interest thereon. But no such question as this was presented to the trial court in appellant's motion for a new trial. We, therefore, do not decide the question. Appellant has attempted to present numerous questions as to the admissibility of evidence, which, however, are generally only supported by abstract propositions of law without any attempt to apply them to the questions involved. But we have carefully ex-

amined the evidence, and the proceedings at the trial, and we find no reversible error in the court's ruling on the admissibility of evidence.

One of appellant's reasons for a new trial was that of newly-discovered evidence. This reason was supported by affidavits. Counter affidavits were filed thereto, and the court, after considering such affidavits and counter-affidavits, found against appellant on the facts stated therein. It was for the trial court, and not this court, to weigh these facts.

The cause was tried at the December term, 1926, of the Marion Superior Court, the same being concluded on December 22, 1926, and the same was then taken under advisement by the court, and, after the expiration of the term of court, and after the expiration of the term of office of the judge, to wit, on January 14, 1927, the court made its findings of fact, stated its conclusions of law thereon, and rendered judgment accordingly. It is appellant's contention that the court, having delayed its action in making its findings, stating its conclusions and rendering judgment, until after the end of the term, and until after the expiration of the term of office of the judge and the commencement of his new term of office, thereby lost jurisdiction of the case. But we are not in harmony with this contention. There is no provision in the statute that a finding and judgment must be rendered before the expiration of the term at which the trial was had. It is provided by §603 Burns 1926 that when an issue of law or fact is submitted to the court, such court or judge, except in certain instances not here involved, shall not hold the case under advisement for more than sixty days. This case was held under advisement for twenty-seven days, and the court therefore did not lose jurisdiction because of its delay.

Nor is there any merit in appellant's contention that because the judge's term of office expired, and, before

the findings and judgment, he entered upon a new term of office, he thereby lost jurisdiction. In *Gartlan* v. *C. A. Hooper & Co.* (1918), 177 Cal. 414, 170 Pac. 1115, 1121, it was contended that the judgment was void for the reason that the judge's term of office expired while he held the case under submission, and that, being re-elected, he decided it after the commencement of his new term, as in this case. And the court, holding that the contention was without merit, stated that: "The cause was pending in the superior court which is a continuing tribunal. It was decided by the same superior judge who tried it. There was no interregnum between his terms, and hence the holding by the individual of the office must be held to have a continuous holding in so far as the duties of his office may be involved. The cases cited by appellant have no application to the facts of this case, since they refer to the power of a newly elected judge to decide matters in which he had not heard the evidence in his judicial capacity."

In *Jewett* v. *Schmidt* (1905), 108 App. Div. 322, 95 N. Y. Supp. 631, 634, an objection was made that the proceeding could not be continued before the judge because his term of office had expired. This objection was overruled, and the Supreme Court held properly so, the court stating that: "The motion was made to the court and the reargument directed to another court. Both special terms were held by the same justice, and the fact that his old term of office had expired and his new term begun immediately did not deprive him of the power to hold the court or entertain the motion. In *Kelly* v. *Christal*, 16 Hun. 242, it was held that where the term of a justice of the Supreme Court expired during a trial, and he immediately entered upon a new term under a re-election, he had jurisdiction to conclude the trial and decide the case."

The principle held in these two cases is in harmony

with the general rule as stated in 33 C. J. 963, where it is stated that "where a judge succeeds himself he continues to exercise the powers lodged in the court. He may render judgment in a case heard by him during a previous term."

In harmony with this principle, we hold that though the term of court had ended, and the term of office of the judge had ended, and he had entered upon a new term of office, he had jurisdiction to make his findings, and to render judgment thereon. We find no reversible error.

Judgment affirmed.