## JOHN PAHL v. LONG MEADOW GUN CLUB.[1]

December 19, 1930.

No. 28,140.

---

[1]Reported in 233 N. W. 836.

*A. X. Schall, Jr.* for appellant.

*H. W. Volk,* for respondent.

WILSON, C. J.

Plaintiff appealed from an order denying his motion for a new trial.

For many years defendant has been in possession as lessee of about 800 acres of land, upon a large portion of which is a part of Long. Meadow lake, which extends easterly and westerly. This is in the Minnesota river valley. Surface water from the high land to the north feeds the lake. The outlet from the lake is to the east and southerly to the river.

Plaintiff owns a farm between the lake and the river having about a mile of shoreline along the southwesterly portion of the lake. A portion of his land along the lake is very low.

Defendant maintains a clubhouse on the northerly shore of the lake. Its members do their shooting on a pass or narrow point of land projecting into the lake from the south shore opposite the clubhouse. To go to and fro it is necessary to cross the lake, which sometimes is more of a slough than a lake, by rowboats.

In 1878 a ditch was dug by one Hanson at the easterly end of the lake, leading east in a straight line to one of the remote turns in the natural outlet. By this ditch the distance to the river was shortened, drainage facilitated, and the water level in the lake lowered.

In October, 1883, the owners of the land now leased by defendant also owned the land now owned by plaintiff, and they granted to Frederick Groos and Henry S. Garfield, until May 1, 1898,

"the sole and exclusive right, license and permission to enter upon, use and enjoy the lands hereinafter described for the purpose of hunting, fishing, setting nets and traps, and any and all other gaming purposes therein and thereupon, but for no other purposes."

In February, 1884, Groos and Garfield assigned their interest to defendant. In March, 1906, the owner of the land now owned by plaintiff granted to defendant, until May 1, 1918,

"the sole and exclusive right, license and permission to enter upon, use and enjoy the lands hereinafter described, for the purposes of hunting, fishing, setting nets and traps, and any and all gaming purposes therein and thereupon, but for no other purposes, but not in any manner to enter into or upon any growing crops."

The artificial ditch permitted the lake to become so shallow that a rowboat could not go back and forth between the clubhouse and the shooting ground. Because of this and in order to hold the water high enough for such means of travel, defendant in 1883 constructed a dam in the artificial ditch. Such dam has necessarily been rebuilt on four different occasions, but, since the original construction, has consistently been maintained and has accomplished the desired purpose. The natural outlet has never been dammed. It still exists.

By this action plaintiff seeks to recover damages alleged to have been suffered by his land being overflowed incident to the maintenance of the dam. He also asked that defendant be required to remove the dam and that it be enjoined from further obstructing the flow of the water. Defendant claimed an easement by prescription for the maintenance of the dam.

■ The court found that plaintiff's claim that the water level had in recent years been maintained at a higher level than in former years was not sustained by the evidence. The finding is that the water under normal conditions has been maintained at a substantially uniform level during the fall months for 45 consecutive years. The facts essential to establish an easement for this portion of the year have been established. An easement by prescription may be obtained if the use is so limited. Swan v. Munch, 65 Minn. 500, 67 N. W. 1022, 35 L. R. A. 743, 60 A. S. R. 491.

■ The claim is that the dam was a nuisance within the meaning of G. S. 1923 (2 Mason, 1927) § 9580, and therefore the right to maintain it could never be acquired by prescription. 5 Dunnell, Minn. Dig. (2 ed.) § 7256. Undoubtedly an unlawful obstruction of water, so as wrongfully to overflow the land of another, may be a nuisance. The difficulty with this claim in the instant case is that the findings do not show the facts essential to constitute a nuisance. Drainage rights may be acquired by prescription. Naporra v. Weckwerth, 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124.

■ Plaintiff points to the two leases as obstacles to defendant's acquiring the easement claimed. These leases, as above indicated, grant in substance a license to hunt, etc. The damming of the water was not an incident to the right to hunt, etc. acquired under the two leases; and, as stated by the trial court, such incidental right

"would be the right to land boats, to place and store fishing nets, and to erect and maintain hunting blinds; but the right to fish or hunt could hardly be said to include as incidental to it the right to flood 15 or 20 acres of land, which otherwise might be used for pasture, hay or cultivation. As a matter of fact, it does not appear

anywhere that the flooding was an actual benefit to this particular land for hunting or fishing, but that the flooding was done for the purpose of raising the water so that a crossing could be made from the club-house to a point opposite, at a considerable distance from the land of plaintiff."

We are of the opinion that the privilege of hunting, etc. upon the land did not authorize the damming of the water. Salene v. Isherwood, 55 Or. 263, 106 P. 18; Id. 61 Or. 572, 123 P. 49, Ann. Cas. 1914B, 542, 40 L.R.A.(N.S.) 299, and anno. See L. Realty Co. v. Johnson, 92 Minn. 363, 100 N. W. 94, 66 L. R. A. 439, 104 A. S. R. 677. Defendant's conduct exceeded its license or privilege under the leases, and it acted under circumstances ripening into an easement by prescription to maintain the water level as found by the trial court. See Naporra v. Weckwerth, 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124; 9 R. C. L. 771, §§ 32-47.

Of course there must be a beneficial user of the servient estate. Simons v. Munch, 115 Minn. 360, 132 N. W. 321. But clearly defendant did so use it. It had a very definite purpose, and it accomplished that purpose by enabling defendant's members to use their rowboats for the purpose mentioned.

Affirmed.