## ROBINS v. ROBERTS.
No. 5137.   Decided October 28, 1932.   (15 P. [2d] 340.)

*Joseph Chez*, of Ogden, for appellant.

*Bagley, Judd & Ray*, of Salt Lake City, for respondent.

FOLLAND, J.

In this suit plaintiff by two causes of action sought to restrain defendant (a) from maintaining on his land a cement dam or headgate thereby causing the waters of Kay's creek to back up and overflow its banks and flood a portion of plaintiff's land; and (b) from maintaining a row of willow trees along the boundary common to plaintiff's land and defendant's land, and from permitting the roots and branches thereof to extend into and over plaintiff's

land. Plaintiff also prayed for damages on each cause of action. Defendant's defense to the first cause of action was set out by way of counterclaim (designated by him as cross-complaint) wherein he alleged that he and his predecessors in interest as owners of his land had long ago established an easement in plaintiff's land to back up the water in Kay's creek and to flood one-fourth acre of plaintiff's land adjacent to the creek by the maintenance of the dam or headgate, and prayed the court to quiet his title to such easement and restrain plaintiff from interfering therewith. Defendant's defense to the second cause of action was that the row of trees in question marked the common boundary line between the two farms and that the trees were, and for forty years had been maintained by the parties as a common boundary line fence.

The case was tried to the court without a jury. After the introduction of all the evidence the trial judge viewed the premises and then made findings against the plaintiff and in favor of the defendant on all the issues, dismissed plaintiff's complaint, and entered judgment quieting title in the defendant to an easement to hold back the waters in Kay's creek as they pass through plaintiff's land and to flood one-fourth acre of plaintiff's adjoining land, and enjoined plaintiff from interfering with such easement. From this judgment plaintiff appeals and has assigned twenty-four alleged errors. The assignments are directed to three questions which may be stated as follows: (1) That defendant's counterclaim fails to state a cause of action; (2) that the evidence does not support the findings of the trial court that an easement had been established by defendant as claimed, because of a break in continuity of use of the alleged easement by reason of: (a) change in the location of the dam; (b) the construction of a flume across Kay's creek in the vicinity of the dam to carry water from the north branch of Kay's creek through the Weaver Lane Ditch to irrigate defendant's seventeen acres of land; and (c) increase in the burden of the easement by the construction of

a cement dam some five or six inches higher than the old earthen dam; and (3) that the finding that black willow trees constitute a boundary line fence mutually agreed to by the parties is not sustained by but is contrary to the evidence. The objection that the counterclaim fails to state a cause of action is raised for the first time on appeal. No demurrer was filed and no objection made to the introduction of evidence on this ground.

It is contended the counterclaim fails to state a cause of action because it is not therein alleged "that the easement is under a claim of right nor that it was adverse to appellant nor that it was open and notorious." These are all necessary elements in the establishment of an easement and must be proved to entitle one claiming an easement to prevail. There is evidence in the record supporting each and all of these elements. The use that will give a prescriptive right to maintain a private nuisance, such as the flooding of another's land must be adverse, under claim of right, uninterrupted, and continuous for twenty years, with the knowledge and acquiescence of the party whose right is invaded. *North Point C. I. Co.* v. *Utah & S. L. Canal Co.,* 16 Utah 246, 52 P. 168, 40 L. R. A. 851, 67 Am. St. Rep. 607. All these elements are fairly included in the general allegation of the establishment of an easement, and the averments of the counterclaim clearly indicate that the use claimed was with the knowledge and acquiescence of plaintiff and her predecessors in interest, at least up to the time of the construction of the cement dam in 1912. The question for decision, however, is whether the counterclaim which is attacked for the first time on appeal must contain these specific allegations. If a complaint wholly fails to state a cause of action, objection to it may be successfully urged at any time. *Aaron* v. *Holmes,* 35 Utah 49, 99 P. 450; *Holt* v. *Pearson,* 12 Utah 63, 41 P. 560. A reviewing court, however, does not look with favor upon such objection when made for the first time on appeal, and the complaint or counterclaim will be construed liberally

and supported by every legal intendment in order to uphold the judgment. If the pleading contains allegations from which every fact necessary to maintain the action may be inferred, it will be sustained. 21 R. C. L. 624; 3 C. J. 786; *Escalante Company* v. *Kent* (Utah) 7 P. (2d) 276; *Skillen* v. *Harris*, 90 Mont. 389, 3 P. (2d) 1054. Appellant relies on the case of *Farr* v. *Wheelwright Construction Co.*, 49 Utah 274, 163 P. 256, as decisive that the above mentioned facts are necessary in a pleading. In that case a general demurrer to the complaint was filed and relied on. The complaint in the Farr Case contained no allegation, such as contained in the counterclaim here, of the establishment of an easement. In a suit to quiet title to an easement, it is sufficient to allege ownership generally, and it is not necessary to show the particular manner in which title was acquired. 19 C. J. 1000; *Brasington* v. *Williams*, 143 S. C. 223, 141 S. E. 375. An allegation that plaintiff is the owner of specific real property is the averment of an ultimate fact and not a conclusion of law. 9 R. C. L. 818; *Corea* v. *Higuera*, 153 Cal. 451, 95 P. 882, 17 L. R. A. (N. S.) 1018. So, likewise, is the allegation one of ultimate fact that "defendant and his predecessors in interest have long since established a right of easement in the land of the plaintiff" specifically describing the channel bed of Kay's creek and the adjacent land which it is claimed was overflowed and to which defendant claims an easement. Defendant further alleged that plaintiff claims some right, title, or interest in the described land which "is adverse to the right of easement established by defendant and his predecessors in interest in the channel bed of Kay's creek and the land immediately adjacent thereto." While this is not a model of pleading, there are sufficient allegations to withstand attack for the first time on appeal. Plaintiff replied denying all the allegations of the counterclaim except she admitted she claimed some right, title, and interest in the land described, setting up such claim, and "that the claim of right, title, and interest of the plaintiff adverse to the right of easement

alleged to have been established by defendant and his predecessors in interest." The case was tried on the theory that the allegations of the complaint were sufficient to raise an issue as to the existence of the claimed easement in plaintiff's land. Plaintiff attempted to prove that such easement never existed, but that, if it did, it had been abandoned by nonuser because of the use of a flume to carry water from another source across Kay's creek at the dam to irrigate defendant's seventeen acres of land, claimed by him to have been irrigated by the use of the dam, and that the burden of the easement in the land had been increased by the construction and use of a cement dam higher than the original dam. These issues were tried and determined adverse to plaintiff's contention.

Appellant complains that the findings of the court with respect to the establishment of a right of easement in defendant to hold back the waters in Kay's creek and flood one-fourth acre of land adjoining thereto by reason of the maintenance of a dam in Kay's creek on defendant's property is not supported by, but is contrary to, the evidence. Plaintiff and defendant are owners of adjoining farms. Plaintiff's farm adjoins defendant's land on the northeast. Kay's creek arises in the mountains in a general easterly direction from the land in question and the center branch of the creek referred to throughout the case as Kay's creek courses in a southwesterly direction through approximately the center of both farms. At a point on Kay's creek about twenty feet from the common boundary line, the defendant maintains a cement dam which was constructed in 1912. This structure took the place of an earthen dam which had been used for many years to enable defendant to take irrigation water from Kay's creek to irrigate seventeen acres of land lying to the south and east of the creek. This earthen dam was placed in the stream as early as 1880 and was used continuously until it was replaced by the cement dam in 1912. Flashboards are placed in the dam and the water diverted thereby for about eight hours each week

during the irrigation season. When the flashboards are in the dam, the water is backed up in the channel of Kay's creek as it crosses appellant's land and overflows the banks and inundates a small area near the common boundary between the properties. The amount of land flooded since the cement dam was constructed is claimed by appellant to be three acres. A survey of the area was made by an engineer which shows the land flooded to be .25 of an acre. It is only this one-fourth acre, described by metes and bounds in the defendant's counterclaim and in the court's findings and judgment, to which defendant claims he has an easement. One of the grounds on which plaintiff attacks the findings of title to an easement in defendant is that there has been an enlargement of the area flooded by the construction of the cement dam five or six inches higher than the old one. The shoulder of the new cement dam is five or six inches higher than the earthen dam it replaced. It does not follow, however, that the easement on plaintiff's land has been enlarged by reason of such construction. While witnesses for plaintiff testified that a larger area is now flooded than heretofore, the testimony of defendant's witnesses and the defendant himself is to the effect that no larger area is now flooded than before 1912. Of course, defendant cannot by a new structure enlarge the easement and flood more of plaintiff's land than he did prior to the construction of the new dam. An easement acquired by prescription is always limited to the use made during the prescriptive period. *Stephens R. & R. L. S. Co.* v. *U. P. R. Co.*, 48 Utah 528, 161 P. 459. This easement was established by the use of the old dam, and defendant may maintain flashboards in the new dam to such a height as will flood plaintiff's land to the extent only that was done by use of the old dam. *Watters* v. *Anamosa-Oxford Junction L. & P. Co.*, 184 Iowa, 566, 167 N. W. 765; *Robbins* v. *Powers*, Judge, 170 Iowa, 223, 150 N. W. 244. The structure of the dam is not on the property of plaintiff so that it matters not that the dam itself is larger or occupies more ground,

if, when flashboards are placed in the dam, the water is not raised to a greater height than theretofore. By the decree the trial court has limited the height to which water may be raised and has limited the easement in plaintiff's land to the creek channel and one-quarter acre of land. That defendant has established such an easement by user for forty or more years is supported by a fair preponderance of the evidence. The ditch which carries the water from the dam to the irrigated land is on the same elevation, and is of the same size as it always has been and although its course was changed some distance from the dam, the ditch which takes the water from the impoundment is the same in location, size and capacity as it was prior to 1912. Substantially the same amount of land is irrigated as was irrigated theretofore.

It is also claimed by plaintiff that there was a break in the continuity of use of the dam. There is testimony that a flume was constructed by a predecessor in interest of defendant about the year 1900 for the purpose of carrying water from the Weaver Lane Ditch across Kay's creek immediately above the dam and discharging into the ditch which had carried the water from the dam to defendant's seventeen acres of land located southeasterly from Kay's creek. Plaintiff attempted to prove that this had been used to some considerable extent, but we think it is satisfactorily shown by the evidence that this was a temporary or experimental use merely, and that it was not intended to and did not supersede or take the place of the dam. The person who constructed and used tht flume testified that it was washed out in 1900, the same year it was constructed, and had never been replaced. There is no fair preponderance of evidence to show an abandonment by either the defendant or his predecessors in interst of the use of the dam or of the right of easement claimed by them to flood plaintiff's land when such dam was used.

For a second cause of action plaintiff alleged that along the boundary common to plaintiff's and defendant's lands,

beginning at the northeast corner of defendant's land and running to Kay's creek, the defendant many years ago planted and has since maintained willow trees dividing plaintiff's land from defendant's land; that the branches and roots have spread so that the trees have encroached upon plaintiff's land for a distance of about fifty feet rendering the land upon which the roots and trees have encroached valueless; and that the defendant had carelessly and negligently permitted the trees and the roots to spread and grow and has at all times refused to remove the same or confine them to his own land. The prayer is for damages and that defendant be enjoined and restrained from maintaining the willow trees along the boundary common to plaintiff's and defendant's lands. Defendant denied the allegations of plaintiff's complaint, denied exclusive ownership of the willow trees, and alleged that the trees are owned jointly by plaintiff and defendant, and that the parties and their predecessors in interest had acquiesced in the trees remaining where they are as a fence or barrier between the two parties. The court made findings of fact that the row of trees had for more than thirty-five years served as a common boundary fence between the parties and had been acquiesced in by the parties and each of them as such fence, and that the defendant did not plant the trees or maintain them and had not committed any nuisance thereby, or carelessly or negligently permitted the roots and branches to spread, and refused to remove them, but on the contrary had always stood ready and willing to joint with plaintiff in removing them and substitute a post fence.

Trees standing on a boundary line between adjoining owners are the common property of both owners who are tenants in common as to the trees. *Scarborough* v. *Woodill,* 7 Cal. App. 39, 93 P. 383; *Phillips* v. *Brittingham,* 2 Boyce (Del.) 173, 77 A. 964; *Blalock* v. *Atwood,* 148 Ky. 828, 147 S. W. 748. The only question raised is whether the evidence supports the finding that these are boundary line trees. The evidence shows that more than

forty years ago and before a survey was made the predecessors in interest of appellant and respondent agreed on the boundary line between their respective properties and that such line has been recognized as the established boundary ever since. At about the time of this agreement a line of black willows was planted along the boundary line for about four hundred feet. These have now grown until they are quite large. The roots and branches extend out a considerable distance from the trunks. There is testimony that the trees were planted by a predecessor in interest of the defendant on his own land. On the other hand the allegation in plaintiff's complaint is that defendant maintained the trees "along the boundary common to plaintiff's and defendant's land." Defendant relies on this allegation as an admission that the trees are on the boundary line, and has also adduced evidence in support of his contention that the trees were planted and maintained on the boundary line of the properties and are owned by the adjoining owners; that each owner had at times pruned and cared for the trees and filled in the gaps between the tree trunks so as to maintain the line of trees as a boundary fence. Defendant testified that no complaint had ever been made to him as to the maintenance of the willow trees until about two years before suit was commenced and that he then had offered to get rid of the trees any time the plaintiff would join in removing them and in constructing a fence on the boundary line. There is no such preponderance of evidence against the findings of the court as would justify us in directing findings to the contrary. The evidence supports the finding, irrespective of who planted the trees, that they were planted on the line between the properties and for more than thirty-five years had served as a boundary fence with the acquiescence of both owners.

The judgment of the district court of Davis county is affirmed with costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.