[No. 27916.   Department One.   November 3, 1941.]

DIKING DISTRICT NO. 2 OF PEND OREILLE COUNTY *et al.*,
*Appellants,* v. CALISPEL DUCK CLUB, *Respondent.*[1]

[1]Reported in 118 P. (2d) 780.

R. L. *Edmiston,* for appellant.

R. E. *Lowe,* for respondent.

ROBINSON, C. J.—This is an action to enjoin the maintenance of a dam. Respondent is the owner of a fifteen hundred acre tract of land in the valley of the Calispel river, in Pend Oreille county, Washington, on which is situated a body of water called Calispel lake. Respondent, since 1907, has maintained a dam across the outlet of the lake, and has used the lake as a wild fowl resort and for the purposes of a duck hunting club. The property represents a capital outlay in excess of seventy thousand dollars, and an even greater sum has been spent on its upkeep during the more than thirty years of its existence. Litigation involving the dam has been before this court on two previous occasions, *McClure v. Calispell Duck Club,* 157 Wash. 136, 288 Pac. 217; *Murphy v. Calispel Duck Club,* 163 Wash. 366, 300 Pac. 1060.

The land in the valley is very flat, sloping gently— less than one inch to the mile—toward the Pend Oreille river. Calispel river, which is ordinarily little more than a creek, empties into the Pend Oreille some six miles below respondent's dam.

Prior to a certain diking improvement brought about by appellant Diking District No. 2 in 1912, all of the

land in the valley was annually inundated by flood waters of the Pend Oreille river, which overflowed its banks at the lower end of the valley. The flood waters came down in June and July from the headwaters of the river in Montana and Canada.

Appellant was organized in 1911 for the purpose of constructing a culvert underneath the tracks of the Idaho Washington Northern Railroad Company which are laid upon a high fill crossing the lower end of the district. By equipping the culvert with gates, the fill of the railroad company could be used as a dike to keep the flood waters of the Pend Oreille from backing up into the valley of the Calispel. This culvert was completed in 1912.

When the gates of the culvert are closed, the waters of the Calispel river and tributary streams, pent up in the district, inundate the entire valley, sometimes to the extent of ten feet, but not to the extent that it was inundated prior to the construction of the culvert and gates. During these periods, respondent's dam is under water. When the waters in the Pend Oreille river recede to a point below the level of the waters in the district, the gates of the culvert are opened, and the waters in the district flow out through the culvert and are carried away with the waters of the Pend Oreille. The lands in the valley are also inundated during the local spring freshets in the Calispel river, which usually occur in March and April.

A large part of the lands of the district are valuable for a wild hay grass, called silvertop, which grows thereon in considerable abundance, and which is said to be almost as good as timothy or alfalfa. This grass grows under the water and matures in a month or two after the water has run off the land.

The case was tried in October, 1932, but was not decided until July, 1939. On July 5, 1939, the court en-

tered a memorandum opinion finding that the dam did not encroach upon any function of the diking district, and on August 31, 1939, having overruled appellant's motion for judgment in its favor, entered a judgment dismissing the suit.

[1] Appellant's first contention is that a new trial should have been granted because of the length of time that elapsed between the trial of the cause and the rendition of the judgment. It appears that, while the case was under submission, a term of office of the trial judge expired after his reelection to the same office. Contention is made that, by reason of the expiration of the judge's term of office after the trial and before the rendition of judgment, the judgment is void. We think there is no merit in this contention. The same contention was made in *Haag v. Lawrence Lumber Co.*, 88 Ind. App. 432, 164 N. E. 414, and also in *Gartlan v. C. A. Hooper & Co.*, 177 Cal. 414, 170 Pac. 1115. It was overruled in each case. In the latter case, the court said:

"The cause was pending in the superior court which is a continuing judicial tribunal. It was decided by the same superior judge who tried it. There was no interregnum between his term, and hence the holding by the individual of the office must be held to be a continuous holding in so far as the duties of his office may be involved."

That is the case here, and since appellant has made no showing that upon a new trial any new or different evidence could be submitted, a reversal of the judgment would merely permit a new trial upon the same evidence which has already been submitted to the court.

[2] Appellant's next contention is that the evidence shows that the dam is a nuisance, and that it has the right to maintain an action for its abatement. The judgment of the trial court was apparently based upon

the ground that the dam did not encroach upon any function of the diking district. In its memorandum opinion, the court states:

"The only question to be decided is the question of fact, and that is whether or not the maintenance of this dam interferes with the drainage of the property. Both parties have gone to considerable expense and trouble in order to determine whether or not the water is raised by the dam of the defendant in such a manner as to interfere with the functions of the diking district. The principal dike of plaintiff is five or six miles below the dam of the defendant. I am of the opinion that to hold the dam of the defendants encroaches upon the functions of the plaintiff could be arrived at only by conjecture or supposition. From the evidence herein I do not believe that the plaintiffs have furnished the burden of proof required from them in order to prevail."

We have examined all of the testimony and exhibits in the record and have reached the same conclusion arrived at by the trial court. Appellant is not the owner of any land in the district. All of the land claimed to be affected by the dam is owned by private individuals. The land so claimed to be affected is only a small part of the lands embraced within the district. The dam is located six miles above the culvert and gates of the appellant. If the dam interferes with the drainage of lands adjacent to the lake, the cause of action to remedy the situation is in the owners of such lands, not in the diking district.

The evidence further shows that, if the dam does interfere with the drainage of lands at the head of the lake, respondent has acquired, by prescription and adverse user, the right to so interfere with such drainage. The original dam was constructed in 1907. The top of the dam was of the same elevation above sea level—approximately 2032 feet—as the present dam is

when flashboards are in place in its five spillways, during duck hunting season.

When the surface of the lake is maintained at this level, the lake, in most parts, is about eleven inches and a fraction in depth, barely sufficient to enable small boats to be pushed around over the surface of the lake. In a broad channel running through the middle of the lake, the water is about a foot deeper. The lake, when maintained at the 2032 foot level, is entirely upon lands owned by respondent. The evidence shows that the surface of the lake has been maintained at this level at all times during the duck hunting season, since 1907, except possibly on one or two occasions when the dam was being repaired or the season was unusually dry.

We think that, under the evidence in this case, if the lake does interfere with the drainage of lands of others adjacent to the lake when maintained at this level, respondent has, by prescription and adverse user, obtained the right to maintain the lake at this level and so interfere with such drainage, during the duck hunting season. *Berryman v. East Hoquiam Boom & Logging Co.*, 68 Wash. 657, 124 Pac. 130; *McInnis v. Day Lumber Co.*, 102 Wash. 38, 172 Pac. 844; *Ochfen v. Kominsky*, 121 Wash. 60, 207 Pac. 1050; *Swan v. Munch*, 65 Minn. 500, 67 N. W. 1022; *Pahl v. Long Meadow Gun Club*, 182 Minn. 118, 233 N. W. 836; *Halstead v. Young*, 282 Mich. 558, 276 N. W. 703; *Robins v. Roberts*, 80 Utah, 409, 15 P. (2d) 340; 27 R. C. L. 1287, § 198; 67 C. J. 716, § 47.

Contention is also made that Calispel river is a navigable stream, and that no right to obstruct a navigable stream can be acquired by prescription. The evidence shows that the stream has never been used for general commercial navigation. In its deepest parts, the channel is not more than two feet deep. The only evidence that the stream has been used for navigation

of any kind consists of evidence that many years ago logs were floated down the stream during periods of high water. A stream which is navigable only for the purpose of floating logs is not a navigable stream, within the meaning of our constitutional provision, Art. XVII, § 1, declaring the ownership of the beds of navigable waters to be in the state. *Watkins v. Dorris*, 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; *State ex rel. Davis v. Superior Court*, 84 Wash. 252, 146 Pac. 609.

The maintenance of a dam across a stream such as this is not necessarily a nuisance or unlawful if it does not unreasonably interfere with the rights of others entitled to use the stream, and the so-called Calispel river has not even been used for driving logs for a period of years, and then, only very intermittently. *A. C. Conn Co. v. Little Suamico Lumber Mfg. Co.*, 74 Wis. 652, 43 N. W. 660; *Trullinger v. Howe*, 53 Ore. 219, 97 Pac. 548, 99 Pac. 880, 22 L. R. A. (N.S.) 545.

Moreover, only the state, or some agency authorized to exert its sovereign power, or a person specially injured by the maintenance of an obstruction in navigable waters may maintain an action to enjoin the obstruction. *Lampa v. Graham*, 179 Wash. 184, 36 P. (2d) 543; *Charnley v. Shawano Water Power & River Imp. Co.*, 109 Wis. 563, 568, 85 N. W. 507, 509, 53 L. R. A. 895.

The judgment appealed from is affirmed.

BEALS, MAIN, MILLARD, and SIMPSON, JJ., concur.